# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVID LEON JOHNSON, | |
| Petitioner, | Case No. 1:18-cv-00216-DCN |
| vs. | **MEMORANDUM DECISION AND ORDER** |
| JOSH TEWALT, Director of the Idaho Department of Correction;[1] and CARMEN DYAS, Senior Probation Officer for Interstate Compact Parolees, also with the Idaho Department of Correction, | |
| Respondents. | |

Pending before the Court in Petitioner David Johnson's habeas corpus matter is Respondents' Motion for Partial Summary Dismissal, which is now fully briefed and ripe for adjudication. Dkts. 9, 13, 15. The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by the parties. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006). Having carefully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

---

[1] The current director has been substituted for the former director, who retired in December 2018.

# BACKGROUND

The Idaho Supreme Court explained the background of the case as follows:

> David Leon Johnson, the appellant, was charged with three counts of lewd and lascivious conduct with a minor under sixteen pursuant to I.C. § 18–1508. He was charged for offenses he allegedly committed against his daughter, A.J., who was between six and seven years old at the time of the charged conduct. Mr. Johnson had a home in Paul, Idaho, with his wife and five children at the time. The first two counts allegedly occurred over the first weekend of spring break, 2004. Michelle Johnson, Mr. Johnson's wife at the time, purportedly took the couple's children to Utah to visit her parents but left A.J. behind with Mr. Johnson. A.J. testified that while she was home alone with Mr. Johnson, he molested her on two occasions. First, he allegedly touched and penetrated A.J.'s genitalia with his hands, made A.J. touch his penis manually until he ejaculated, and then forced her to lick chocolate off of his penis. Second, Mr. Johnson allegedly attempted to penetrate A.J. in the shower by lifting her up and onto his penis. The third count alleged that Mr. Johnson molested his daughter over the Memorial Day weekend of 2005.

State's Lodging B-4, pp. 1-2 (first direct appeal).

In a 2006 jury trial, Petitioner was convicted of the first two counts of lewd conduct and acquitted of the third count. State's Lodgings A-1, pp. 1-4; A-2, pp. 320-321. On direct appeal, the Idaho Supreme Court agreed with Petitioner that the trial court committed harmful error in admitting the testimony of Petitioner's sister that he had sexually molested her when he was a teenager. State's Lodging B-4. The court vacated the conviction and remanded the case for a new trial.

Upon remand, the trial court put into motion the procedures for a new trial:

> The parties and the court met for a final pre-trial conference on June 6, 2011. During the conference Johnson's

counsel requested that a jury questionnaire be used to aid in selection of the jury, and counsel submitted a proposed questionnaire to the court on June 7, 2011. On June 16, the district court entered a Minute Order Regarding Preliminary Jury Selection Proceedings (Minute Order) which informed counsel that the court would conduct "preliminary jury selection proceedings" and would "give verbal preliminary instructions and information about the charges in th[e] case." The court attached a written copy of the court's intended comments as Exhibit A to the Minute Order. The certificate of service on the Order indicates that it was served on counsel by facsimile on June 16. The Minute Order also allowed the parties to object to the court's intended comments by June 21; however, Johnson's counsel failed to object.

[On June 22, 2006, the] court summoned jurors to complete the questionnaires, gave them preliminary instructions, and read them the information contained on Exhibit A, which included the following language: "There was a prior trial in this case in 2006. Following an appeal, the Idaho Supreme Court reversed and remanded the case to this court for a new trial." Defense counsel was not present during these hearings and therefore lodged no contemporaneous objection to the court's reading of the instruction.

State's Lodging F-5, p. 3.

On June 27, 2006, one week into voir dire, Defendant's counsel, Mr. Roark, filed a motion in limine to preclude the attorneys or witnesses from "[m]aking any reference to a prior trial in this case" and requesting that, to the extent that witnesses need to refer to the prior trial, that it be referred to as a "previous hearing in this case." In camera, the Court, Mr. Roark, and the prosecutor, Mr. Stevenson, discussed the following:

> THE COURT:    Back on record in chambers at 9:20 A.M. All counsel present.
>
>     Mr. Roark, we took a quick look at your motion in limine, the essence of which is to seek that there be no mention made of

the prior trial in this case. We crossed that bridge last week with both these -- with the supplemental questionnaires. I told the panels when they were in that there had been a prior trial; that on appeal, the Supreme Court had reversed and remanded the case to this Court for trial and that I was assigned to handle this case. So without meaning to and not knowing that was your position, I went ahead and, I think -- did we make that disclosure in the proposed questionnaire?

MR. STEVENSON: The proposed jury instructions.

LAW CLERK: It was in the statement that you read, but it wasn't part of the actual questionnaire.

THE COURT: Right, but we sent that questionnaire out to counsel --

LAW CLERK: Yes.

THE COURT: -- for review? And I can just, at this point, without -- it's appropriate, I think, to talk about this now, because one of the questions I usually ask during the voir dire process is whether anybody's ever been or was on the jury that tried this case previously or was a witness or knew anybody that was a witness or had developed any information from that case, so that was definitely a direction I was going to go, but that bridge has been crossed in that sense, that there has been disclosure made to these folks that there was a trial and a reversal and a remand for a new trial.

MR. ROARK: Well, I'm very concerned about that, because the jury has, in effect, been told that my client has previously been convicted.

| | |
|---|---|
| THE COURT: | They were told there was a prior trial and a remand. The word "convicted" was never used. |
| MR. ROARK: | The word "convicted" may not have been used, but I don't know any reasonable inference that the jury could otherwise draw. |
| THE COURT: | How would you propose that we ever inquire as to previous experience without ever disclosing that there was a prior trial? |
| MR. ROARK: | Well, I think it can be referred to as a prior hearing in terms of what the witnesses have to do, and that does not make it exceptional in terms of how we get around preliminary hearings and grand juries. The jurors are made aware that there was a preliminary hearing or there was a grand jury proceeding and that there is prior testimony. This is a different proposition. I mean, I was concerned, certainly, with finessing that point, and I think that can easily be done by calling it a prior hearing. It may be that either side will want to impeach a witness with an inconsistent prior statement. That would require them to bring out the transcript. But, again, if that's referred to as a prior hearing, I don't find that decidedly more prejudicial than if they were bringing out a preliminary hearing transcript or a grand jury transcript. |
| | Here, however, the jury being told that this matter was once tried and then went to the Supreme Court where it was reversed, again, I think the only reasonable inference that any but brain-dead jurors could take from that would be that he's been convicted, and then that conjures up these paradigms of |

technicalities and so forth. As far as your question about how do find out whether or not these people may have served on a prior jury, I think that that's something that's relatively easy to do, because we ask: "Have you served on a prior jury?" And I think it would be very easy to say, "Have any of you had anything to do with this case prior to today?" Again, that does not require of them a commitment to the proposition that he has been previously convicted. I don't see how we unring that bell.

THE COURT:  Well, I think that we unring it because I sent the script out before we ever came to this and asked for counsel to object, and I didn't get any objections, and so based upon that, I felt free to proceed with that script.

MR. ROARK:  Well, perhaps it was because I've been in trial. I did not see the script. I can't say that it was not sent. I did not see the script. I certainly would have objected had I been here. And I know that wasn't the Court's fault. I was in jury trial. I couldn't avoid that. I would have objected. I'm very concerned about that, Your Honor.

THE COURT:  Well, then, the opening comments to this panel that I make always include the statement that he's been charged; that he has pled not guilty; that the fact of a filing is not evidence; that they shouldn't draw a conclusion of guilt from the fact that a filing -- the point being this is a brand-new day, and I think that that's the way we have to proceed with it at this point is that this is a brand-new trial. This is day one. My concern is a further comment on it, then, if, in fact, there is prejudice -- and I'm not presuming that there is, although I

understand the defense's concerns, any further comment on it as a topic would only, I think, serve to highlight it, and rather than that, by focusing on the fact that this is a brand-new trial and that, at this point, this man stands before them not guilty of anything, lets the jury know where we are procedurally. I think that if there's any nuance in any of the answers to any of the questions from any of the jurors that somehow the appeal and the remand or the prior proceeding has had any effect on them, I'll just go ahead and excuse them at that point for that reason if that's—unless counsel think that's a wrong reason to do that. I'm not—I'm looking to both counsel here in whatever order you'd like to respond to my thoughts.

MR. STEVENSON:   I'm okay with that, Your Honor.

MR. ROARK:   Well, I'm not going to object to that, and I understand that this was inadvertent and could I see the script, by the way, because I –

\* \* \*

THE COURT:   If we could find that file. It came out attached to a minute order.

THE CLERK:   What are you wanting?

THE COURT:   There's a minute order that --

THE CLERK:   That you did last week?

THE COURT:   Yes, that went out to counsel that talked about this supplemental questionnaire proceeding.

(Clerk delivers script.)

MR. ROARK: Well, I appreciate that, Your Honor. As a practical matter, I did not return to the state of Idaho until about 8 :00 P.M. on the 21ˢᵗ of June, and I did not -- again, I did not see that minute order. I did see the juror questionnaires later. As the Court knows, I was in jury trial all of last week, so I certainly would have objected to that. I think it is objectionable. I think it has now tainted the jury to the extent that they have to understand that the case went up and, as the language says, it was reversed. There's also already been a conviction. Consequently, this is not like -- I've had a lot of experience with hung juries where you're trying a case for a second time. More than once, I've tried cases for a third time. That's much easier for both counsel to work with because people were not convinced beyond a reasonable doubt, but they were also not unanimous in finding the defendant not guilty.

Here, the inference is that there was a jury of 12 who were convinced beyond a reasonable doubt that he was guilty. And another vexing part of that, of course, is that there's already enough notoriety surrounding this case, as I think the 11 questionnaires disclose, so -- although I know the Court is going to deny my motion, given all of the time and effort that has gone into this, I would move that this matter be vacated, that we select a new panel, and that they not be informed of the reversal and remand.

THE COURT: All right. Well, thank you, Mr. Roark. Mr. Stevenson, State have any further comments?

MR. STEVENSON: I don't agree on that. We'd ask that the Court does not grant that motion based on

> the very limited knowledge that this panel
> has formed an opinion as to his guilt or
> innocence at this point in time.
>
> *  *  *
>
> THE COURT:     We'll go back on record at 10 minutes
> until 10:00. Counsel for both parties
> present. I looked at that issue again, Mr.
> Roark, 20 and, at this point, I will deny
> the motion to vacate. I think we can go
> forward.

State's Lodging D-2, pp. 74-82.

At the second trial, Petitioner again was found guilty of two counts of lewd conduct.

State's Lodging E-3, p. 608. Petitioner was sentenced to two concurrent five-year fixed

terms in prison, with ten years indeterminate. State's Lodging E-3, pp. 612-614.

Petitioner did not file a notice of appeal from his conviction. On post-conviction

review, Petitioner brought several ineffective of assistance of trial counsel claims,

including a failure to file a timely notice of appeal. State's Lodging E-2, pp.118-134.

Respondent stipulated that trial counsel was ineffective for failing to file a notice of appeal.

State's Lodging E-2, pp.77-79; 88-91. The state district court restored Petitioner's direct

appeal rights by re-entering the judgment of conviction. *Id*. Petitioner's other post-

conviction claims were summarily dismissed. State's Lodgings E-2, pp. 274-295.

Petitioner appealed from both the re-entered judgment of conviction and

dismissal of his other postconviction claims. State's Lodging E-2, pp.101-103, 359-363.

His postconviction appeal was eventually dismissed for failure to file a pro se brief, after

his counsel withdrew for failure to find a viable issue for appeal. State's Lodging G-1 to

G-4. Through counsel, he proceeded on his direct appeal.

On direct appeal, Petitioner asserted that the trial court's introductory statement to the jury created implicit bias in the entire jury panel, and that the trial court should have granted Petitioner's motion to vacate the trial and empanel a new jury panel. State's Lodging F-1. In response, the State argued that Petitioner had waived his implicit bias claim by passing the jury for cause without objection, and, alternatively, that the trial court's statement did not prejudice Petitioner's defense because the court did not say the word "conviction." State's Lodging F-2. In reply, Petitioner countered that his motion for a new jury pool served as a sufficient objection to retaining the jury panel, and—analogizing to denial of a motion in limine—that he was not required to object again before passing the panel. State's Lodging F-3.

The Idaho Supreme Court addressed Petitioner's claim in a three-fold manner: (1) it "h[e]ld that this comment did not create an implied bias among the potential jurors that deprived Johnson of a fair trial"; (2) it determined that because Petitioner's counsel "failed to timely object, either in writing or during the jury questionnaire process, the claim was subject to—and failed under—"the fundamental error standard"; and (3) it concluded that, "[e]ven if Johnson could establish an implicit bias, he waived any claim that the jury was biased when he passed the jury for cause at the conclusion of voir dire." State's Lodging F-5, pp. 4-7. The Idaho Supreme Court denied all of Petitioner's other direct appeal claims and affirmed his convictions. State's Lodging F-5. One justice dissented. *Id.*, pp. 22-26.

Petitioner raises five claims in his federal Petition for Writ of Habeas Corpus. In the pending Motion for Partial Summary Dismissal, Respondent asserts that Claim One

and Claim Four are procedurally defaulted. Claim One is that the trial court violated his Sixth and Fourteenth Amendment rights to an impartial jury by informing the prospective jury pool outside the presence of counsel that his case had previously been "reversed and remanded" for a new trial and refusing to vacate the trial and summon new jurors. Claim Four is that Petitioner was deprived of his right to a fair trial when a state witness was permitted to testify from a report rather than based upon his present recollection. Dkt. 1, pp.7-13.

Petitioner does not contest Respondent's position on Claim Four. Thus, this Order focuses on Claim One, and, more particularly, whether the Idaho Supreme Court's rejection of Claim One rests on legal grounds "independent" of federal law. For that reason, the "Standard of Law" section of this Order is also focused on the United States Supreme Court's "line of authority" addressing that issue. By it own admission, the United States Supreme Court has noted that this "line of authority has not been without historical uncertainties and changes in direction," and that its efforts to "deal with this problem" have been "somewhat tortuous." *Wainwright v. Sykes*, 433 U.S. 72, 81, 82 (1977).

## STANDARDS OF LAW

When a petitioner's compliance with threshold procedural requirements is at issue, a respondent may file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989). Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."

A habeas petitioner must exhaust his or her remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims to that court. *Id.* at 847.

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray*, 518 U.S. at 161-62. Procedurally defaulted claims include those that the Idaho courts have rejected on an adequate and independent state procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To constitute an "adequate" state ground, a procedural bar must be one that is "'clear, consistently applied, and well-established' at the time of the petitioner's purported default." *Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)).

To constitute an "independent" state procedural bar, the bar must rest on a purely state law ground. In a series of cases posing dilemmas of mixed state and federal law issues, the Supreme Court of the United States developed several rules to govern determinations of whether a state decision is "independent" of federal law.

In *Wainwright v. Sykes*, 433 U.S. 72 (1977), the United States Supreme Court held that federal district courts facing a claim that is procedurally defaulted under adequate and independent state law procedural grounds must apply the "cause and prejudice" test before hearing the merits. In the prior state proceedings, the Florida Supreme Court had refused to hear Mr. Sykes' *Miranda* claim[2] because he had failed to object to admission of the testimonial evidence at trial and had failed to raise the issue on direct appeal. *Id*. at 90-91.

Reviewing whether the Florida contemporaneous objection rule was independent of federal law, the *Sykes* court reasoned that, because "Florida procedure did, *consistently with the United States Constitution*, require that respondents' confession be challenged at trial or not at all, … his failure to timely object to its admission amounted to an independent and adequate state procedural ground which would have prevented direct review here." *Id*., pp. 86-87 (emphasis added). In other words, because the state procedural bar did not transgress federal constitutional *procedural* protections, the state procedural bar applied to bar federal review of the federal claim; accordingly, Mr. Sykes was required to show cause and prejudice to have the merits of the defaulted *Miranda* claim adjudicated in his federal habeas corpus case.

In *Michigan v. Long*, 463 U.S. 1032 (1982), a direct appeal case about a *Terry* stop,[3] the Supreme Court of the United States halted the long-standing practice of holding federal cases in abeyance to permit the state courts to clarify ambiguous decisions that may or may

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 478 (1966).

[3] *Terry v. Ohio*, 392 U.S. 1 (1968).

not have been decided on federal grounds. *See Herb v. Pitcairn*, 324 U.S. 117 (1945).[4]

Different from the *Sykes* habeas case, the *Long* direct appeal case addressed not whether a state *procedural* bar was interwoven with federal procedure, but whether state and federal *substantive* law were interwoven—the state court "referred twice to the state constitution in its opinion but otherwise relied exclusively on federal law" on the *Terry* issue. 463 U.S. at 1037. For efficiency's sake, the Supreme Court decided to adopt a conclusive presumption for determining whether a state court decision rested on an independent state ground that would preclude federal review—"the plain statement rule." The Supreme Court clarified that, "when, as in this case, a state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face

---

[4] In *Herb*, a Federal Employers' Liability Act case, the Supreme Court reasoned:

> [W]e cannot perform our duty to refrain from interfering in state law questions and also to review federal ones without making a determination whether the one or the other controls the judgment. And in cases where the answer is not clear to us, it seems consistent with the respect due the highest courts of states of the Union that they be asked rather than told what they have intended. If this imposes an unwelcome burden it should be mitigated by the knowledge that it is to protect their jurisdiction from unwitting interference as well as to protect our own from unwitting renunciation.
>
> It is our purpose scrupulously to observe the long standing rule that we will not review a judgment of a state court that rests on an adequate and independent ground in state law. Nor will we review one until the fact that it does not do so appears of record. But because we will not proceed with a review while our jurisdiction is conjectural it does not follow that we should not take steps to protect our jurisdiction when we are given reasonable grounds to believe it exists. We think the simplest procedure to do so, where the record is deficient, is to hold the case pending application to the state court for clarification or amendment.

324 U.S. at 127–28.

of the opinion, we will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so." *Id*. at 1040–1041.

In *Ake v. Oklahoma*, 470 U.S. 68 (1985), a direct review case, the United States Supreme Court reviewed yet another variation—not whether state procedural rules were contrary to federal procedural protections, but whether federal substantive law was interwoven with a state procedural bar.[5] The Oklahoma Court of Criminal Appeals had rejected Mr. Ake's contention that, as an indigent defendant, he was entitled to the assistance of a psychiatrist for his defense. After denying Mr. Ake's claim on the merits, the Oklahoma court observed that Mr. Ake had waived his claim by not repeating his request for a psychiatrist in his motion for a new trial, a state law procedural rule. The Oklahoma court did not perform a fundamental trial error analysis of Mr. Ake's claim.

Nevertheless, the United States Supreme Court looked to Oklahoma fundamental error precedent to determine that Oklahoma law provided that a "violation of [a] constitutional right constitutes fundamental error." *Id*., pp. 74-75. The Supreme Court determined that, according to Oklahoma precedent,

> the State has made application of the procedural bar depend on an antecedent ruling on federal law, that is, on the determination of whether federal constitutional error has been committed. Before applying the waiver doctrine to a constitutional question, the state court must rule, either explicitly or implicitly, on the merits of the constitutional question.

---

[5] Federal substantive law intertwined with state procedural law was also the subject of *Herb v. Pitcairn, supra*, but *Herb* was not a habeas corpus case.

*Id*. at 75. Applying Oklahoma precedent to Mr. Ake's case, the Supreme Court concluded that "the additional holding of the state court—that the constitutional challenge presented here was waived—*depends on the court's federal-law ruling* and consequently does not present an independent state ground for the decision rendered." *Id.* (emphasis added).

In *Harris v. Reed*, 489 U.S. 255 (1989), the United States Supreme Court faced an ambiguous state court opinion. The Supreme Court held for the first time that the *Long* "plain statement" rule applied in federal habeas corpus proceedings. *Id*. at 261. That is, a procedural default does not bar consideration of a federal claim on habeas review unless the last state court judgment in the case "clearly and expressly states" that its judgment rests on an "adequate and independent" state procedural bar. *Id*. at 263-65.

In *Coleman v. Thompson*, 501 U.S. 722, 733 (1991), the Supreme Court considered whether Mr. Coleman's federal claim was procedurally defaulted because he had not complied with the state of Virginia's mandatory rule that a notice of appeal must be filed within 30 days of judgment. Mr. Coleman asserted that the *Ake* holding—that a determination of federal substantive law antecedent to a determination of a state procedural bar rendered a state court decision non-independent—should be applied to permit the federal court to hear the merits of his claims. He argued that the Virginia Supreme Court "did not automatically apply its time requirement" in his case, but instead "first considered the merits of his federal claim and applied the procedural bar only after determining that doing so would not abridge one of [his] constitutional rights." *Id*. at 741.

Addressing this argument, the United States Supreme Court first observed: "*Ake* was a direct review case. We have never applied its rule regarding independent state

grounds in federal habeas." *Id*. at 740-41. Nevertheless, the Supreme Court concluded that

Mr. Coleman's argument would not be successful because "[e]ven if *Ake*, a direct review

case, applies here, it does Coleman no good because the Virginia court relied on an

independent state procedural ground." *Id*. The Supreme Court rejected Mr. Coleman's

argument that state law precedent showed that the Virginia Supreme Court had established

"a practice of examining the merits of all underlying constitutional claims before denying

a petition for appeal or writ of error as time barred." *Id*. at 741.

Instead, the United States Supreme Court reasoned:

> A more natural reading is that the Virginia Supreme
> Court will only grant an extension of time if the denial itself
> would abridge a constitutional right. That is, the Virginia
> Supreme Court will extend its time requirement only in those
> cases in which the petitioner *has a constitutional right to have
> the appeal heard*.

501 U.S. at 742 (emphasis added)). For example, in *Cabaniss v. Cunningham*, 143 S.E.2d

911 (1965), Mr. Cabaniss did not file a timely notice of direct appeal because the trial court

failed to appoint counsel for that purpose. The Virginia Supreme Court held that "enforcing

the time requirements for appeal in that case would have abridged Cabaniss' constitutional

right to counsel on appeal." *Coleman*, 501 U.S. at 742.

Despite the United States Supreme Court declining to apply *Ake* in habeas corpus

in the *Coleman* case, the United States Court of Appeals for the Ninth Circuit decided that

the rule in *Ake*, a direct appeal case, should be applied to federal habeas corpus cases. *Park

v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000). Other courts have agreed.[6]

---

[6] For example, the federal district court for the Eastern District of California observed:

The summation of the cases governing the "independence" analysis is that, if a state performs a fundamental error analysis on a claim for which there was no objection at trial, *and* that fundamental error analysis requires the state court to review whether the claimant's federal constitutional rights were violated, the claim is *not* independent of federal law and it *can* be adjudicated on the merits on federal habeas corpus review. This rule applies to ambiguous state appellate opinions where (1) the federal substantive claim is interwoven with state procedural law, as in *Ake*, (2) the federal substantive claim is interwoven with state substantive law, as in *Long*; (3) the state procedural rule contravenes federal procedures implicating a federal right, as explained in *Sykes*; or (4) enforcement of

---

The United States Supreme Court adopted the independent and adequate state ground doctrine from the direct appeal context for use in habeas corpus cases. *See Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2501, 53 L.Ed.2d 594 (1977) (citing *Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), a direct review case). Consequently, "[m]ost of the case law on which the independent and adequate state ground doctrine is based consists of decisions in direct appeals from state courts. The principles derived from those cases, however, are as applicable on federal collateral review of a state court conviction as they are on direct appeal." *Spencer v. Kemp*, 781 F.2d 1458, 1470 n. 21 (11th Cir.1986). Ninth Circuit discussions of the independent and adequate state ground doctrine have also relied on direct review cases. *See, e.g., Harmon v. Ryan*, 959 F.2d 1457, 1461 (9th Cir.1992) (citing *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), a direct review case). In *Coleman v. Thompson*, 501 U.S. 722, 741, 111 S.Ct. 2546, 2560, 115 L.Ed.2d 640 (1991), however, the high court noted that *Ake* was a direct review case and that the Court had never applied it in a federal habeas case. While that observation should make any subordinate court pause, what it portends is purely speculative. The history of the development of the doctrine and the practice of the circuits suggest that it is appropriate for this court to apply the principles of independent and adequate grounds derived from direct review to habeas cases unless and until the Supreme Court directs otherwise.

*Karis v. Vasquez*, 828 F. Supp. 1449, 1462 (E.D. Cal. 1993).

the state procedural bar would abridge federal constitutional rights, such as the right to counsel on direct appeal, as explained in *Coleman*. This formulation balances the importance of the availability of the federal habeas corpus remedy with comity and federalism concerns. As the United States Court of Appeals for the Ninth Circuit observed in *Bennett v. Mueller*, 322 F.3 573 (9th Cir. 2003), "[w]hile it is true 'that state courts will not be the final arbiters of important issues under the federal constitution; [it is equally true] that [the federal courts] will not encroach on the constitutional jurisdiction of the states." *Id.* at 582 (quoting *Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557 (1940)).

Underscoring its recognition of comity and federalism principles, the *Long* court advised: "If a state court chooses merely to rely on federal precedents as it would on the precedents of all other jurisdictions, then it need only make clear by a plain statement in its judgment or opinion that the federal cases are being used only for the purpose of guidance, and do not themselves compel the result that the court has reached." 463 U.S. at 1041. Accordingly, where a state has clearly expressed that fundamental error analysis is based exclusively on state constitutional or other purely state law grounds, and the record supports that conclusion, then the federal court will forgo further review. Such an expression of independence can be particular to a single case, or, as in California, by making a general pronouncement that affects all subsequent cases.[7]

---

[7] In *In re Robbins*, the California Supreme Court in effect "overruled" the Ninth Circuit Court of Appeals' holding that its *Dixon* fundamental error rule was not independent of federal law:

> Although the [California fundamental error] exception is phrased in terms of error of constitutional magnitude — which obviously may include federal constitutional claims — in applying this exception and finding it inapplicable we shall, in this case and in the future, adopt the following

In addition, it is important to note that not all state waiver rules contain a fundamental error exception—and where that is the case, state sovereignty to define its own waiver rules governs. For example, if a state has a procedural rule that federal constitutional claims not raised in trial court are barred in appellate court, and the state appellate court simply identifies the state procedural rule and deems the claim barred, it is a decision independent of federal law. Arizona's succinctly-applied waiver rule

---

approach as our standard practice: We need not and will not decide whether the alleged error actually constitutes a federal constitutional violation. Instead, we shall assume, for the purpose of addressing the procedural issue, that a federal constitutional error is stated, and we shall find the exception inapposite if, *based upon our application of state law*, it cannot be said that the asserted error "led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner." (Clark, supra, 5 Cal.4th at p. 797, 21 Cal.Rptr.2d 509, 855 P.2d 729, fn. omitted.)

959 P.2d 311, 338-39 (Cal. 1998) (emphasis added).

After *Robbins*, the Ninth Circuit Court of Appeals respected California's "overruling" of *Dixon* on state sovereignty grounds and declared:

"'It is fundamental that state courts be left free and unfettered by [the federal courts] in interpreting their state constitutions.'" *Michigan v. Long*, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (quoting *Minnesota*, 309 U.S. at 557, 60 S.Ct. 676). "This is not a mere technical rule nor a rule for our convenience. It touches the division of authority between state courts and[federal courts] and is of equal importance to each. Only by such explicitness can the highest courts of the states and [federal courts] keep within the bounds of their respective jurisdictions." *Minnesota*, 309 U.S. at 557, 60 S.Ct. 676.

Therefore, we respect the California Supreme Court's sovereign right to interpret its state constitution independent of the federal law. Applying *Robbins* prospectively, we affirm the district court's determination that the California Supreme Court's post-*Robbins* denial of Bennett's state petition for lack of diligence (untimeliness) was not interwoven with federal law and therefore is an independent procedural ground.

*Bennett*, 322 F.3d at 582–83.

exemplifies this principle:

> In his sixth assignment of error, appellant claims that the trial court erred in failing to suppress three incriminating statements which were made by appellant subsequent to his capture and while incarcerated at the Pinal County Jail in Florence, Arizona. He urges several grounds for the exclusion of these statements, including assertions that they were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the Sixth Amendment right to counsel. We will not, however, concern ourselves with these matters because of the failure to raise these issues at the suppression hearing held in the court below. Issues concerning the suppression of evidence which were not raised in the trial court are waived on appeal. *State v. Griffin*, 117 Ariz. 54, 570 P.2d 1067 (1977); see Rule 16.1(c), Rules of Criminal Procedure, 17 A.R.S. The preclusion of issues applies to constitutional objections as well as statutory objections because an adherence to procedural rules serves a legitimate state interest in the timely and efficient presentation of issues. *State v. Griffin*, *supra*; *State v. Neese*, 126 Ariz. 499, 616 P.2d 959 (App.1980); *see Michigan v. Tyler*, 436 U.S. 499, 512, n. 7, 98 S.Ct. 1942, 1951, n. 7, 56 L.Ed.2d 486 (1978). When a defendant chooses legal representation, the power of decision is delegated to the lawyer, see Standard 4-5.2, Standards for Criminal Justice, and his decisions may be binding upon the defendant, even though rights of constitutional dimensions have been lost. See *Wainwright v. Sykes*, 433 U.S. 72, 91, 97 S.Ct. 2497, 2509, 53 L.Ed.2d 594 (1977) (Burger, C.J., concurring); *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); *Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965).

*State v. Tison*, 633 P.2d 335, 344–45 (Ariz. 1981) (en banc).

With these standards of law in mind, the Court now turns to the question of whether the Idaho Supreme Court's decision on Claim One is independent of federal law, which would preclude this Court from hearing the merits of the claim.

**DISCUSSION**

**1. Claim One**

Claim One is that the the trial court denied Petitioner the right of due process and the right to a fair trial by informing the prospective jury pool that his case had previously been "reversed and remanded" for a new trial. Petitioner contends that this introductory statement "set a tone of prejudice for the jury's first impression of the case; thus, the jury pool was impermissibly tainted and [his] constitutional right to be tried before an impartial jury was infringed." State's Lodging F-5, p. 3.

As stated above, Petitioner's counsel did not see the faxed minute entry order with the attached proposed language because he was out of town conducting a trial, and thus he did not object within the timeframe set by the court. By the time Petitioner's counsel was aware of the issue to be able to object, the state trial court already had disclosed the prior trial information to the jury pool—having done so outside the presence of counsel (a side note not at issue in this case). The trial judge and attorneys discussed whether the "bell could be unrung," and whether questioning jurors about the prior trial would cause more harm than just the single mention of it. The consensus was that the judge and attorneys would listen for hints of bias in the jurors' answers to other questions—with any jurors who seemed biased as a result of the prior trial information to be dismissed readily by the judge for that reason.

Even though Petitioner's counsel unknowingly had lost the opportunity to contemporaneously object to the statement when it was faxed to his office with a clear deadline and did not have a chance to do so when the statement was read because the jury

questionnaire process was done outside the presence of counsel, the record reflects that he knowingly agreed ("Well, I'm not going to object to that") to the trial court's above-stated proposal for continuing voir dire while observing jurors' comments for any suggestion from jurors that the prior appeal might have tainted their impartiality—because, as he articulated, he knew that the trial court would not grant his contemporaneous oral motion to vacate the trial and empanel a new jury.

Defense counsel was correct. After the trial court contemplated the motion for ten minutes, the motion was denied, as expected. Thus, while the failure to object to the faxed order was in the nature of a forfeiture of the issue for appeal, the failure to object to the passing of the jury for cause appears to have been a knowing decision. Having objected to continuing voir dire, having filed a motion to vacate the trial, and having agreed to a plan to finish voir dire only because counsel knew that the motion would be denied, counsel likely thought there was no need to further object because he had objected in his motion to vacate the trial and empanel an untainted jury.

Thus, Petitioner's position before the Idaho Supreme Court was that trial counsel had objected sufficiently, and Petitioner was entitled to relief on the merits. Respondent's opening position was that, regardless of what Petitioner did to voice objection to the court's statement during voir dire, Petitioner waived any claim of a biased jury by passing it for cause. Alternatively, Respondent asserted that the claim had no merit. In reply, Petitioner countered that he had not waived the claim, because, after the motion to vacate the trial and empanel a new jury was denied, the claim was preserved for appeal.

The Idaho Supreme Court sua sponte raised the fundamental error bar based on the failure to object before the instruction was given, and alternatively agreed with Respondent that the claim was waived at the passing of the jury:

> Johnson's counsel failed to timely object to the district court's comments. Counsel was further given additional opportunities to ameliorate the problem through proposing a curative instruction or directing voir dire to the potential jurors regarding the prior trial. Counsel chose neither approach.

State's Lodging F-5, p. 6.

The Idaho Supreme Court did not discuss whether defense counsel's "motion to strike the jury panel" and his act of "continu[ing] to maintain that the curative instruction was not enough and the entire venire should be stricken" was the equivalent of an objection and/or preserved the claim for trial, but stated only: "We hold the trial court's approach [about how to proceed with the current panel] was acceptable, and did not amount to fundamental error." State's Lodging F-5, p. 6.

According to well-established Idaho precedent, if a defendant does not contemporaneously object to an alleged constitutional error at trial, the Idaho appellate courts will not hear the merits of the claim unless the petitioner can demonstrate that the underlying error constituted "fundamental error." *State v. Perry*, 245 P.3d 961, 980 (Idaho 2010). The *Perry* rule has three prongs:

> (1) the defendant must demonstrate that one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate that the error affected the defendant's substantial rights, meaning

(in most instances) that it must have affected the outcome of
the trial proceedings.

*Id*. at 978.

As Petitioner points out, the Idaho Supreme Court recently clarified the second two

prongs of the *Perry* test in *State v. Miller*, 443 P.3d 129, 133 (2019), *reh'g denied* (June 12,

2019), but it did not further clarify the first prong, which is at issue in this case.

In Petitioner' case, the Idaho Supreme Court began its fundamental error analysis

with the following:

> As noted, the court provided counsel with its intended
> instruction containing the allegedly offensive statement in
> advance of trial. Johnson's counsel failed to timely object,
> either in writing or during the jury questionnaire process.
> Therefore, this Court will review Johnson's alleged error on the
> basis of a fundamental error standard.

State's Lodging F-5, p. 4.

As set forth above, the Idaho Supreme Court thoroughly addressed (1) the lack of

merit of Petitioner's claim, (2) Respondent's argument that the claim had been waived, and

(3) its own sua sponte threshold issue that because there had been no contemporaneous

objection, the fundamental error standard applied.

It is difficult not to agree with Petitioner that, because the Idaho Supreme Court

explained its *holding* in terms of the merits analysis, it analyzed the federal issue in a

thorough fashion, rather than simply taking a cursory look at the merits—"We hold

similarly. Commenting that a case was reversed and remanded is not equivalent to

disclosing a prior conviction." State's Lodging F-5, p. 5. On the other hand, Respondent is

correct that the Idaho Supreme Court rejected the claim on not one, but two, different state

procedural default grounds: Respondent's argument that the claim had been voluntarily waived at the passing of the jury for cause *and* the Court's own application of fundamental error for lack of a contemporaneous objection at or before the jury questionnaire was administered. A "voluntary and intelligent relinquishment" of a constitutional right constitutes a waiver, while a failure to object constitutes a forfeiture of a claim." *United States v. Hernandez-Guardado*, 228 F.3d 1017, 1029 (9th Cir. 2000). Waiver and forfeiture both are treated as procedural default arguments. *See Sykes*, 433 U.S. at 87-91.

Here, it is clear that the Idaho Supreme Court was not so concerned about whether its procedural ruling would be upheld on federal habeas corpus review, as it was about analyzing Petitioner's claim thoroughly and alternatively to allow him to make the most of his day in appellate court. The Idaho Supreme Court, in fact, reviewed the federal issue and did not express that this particular claim was decided solely on state law grounds. Therefore, the *Long* "plain statement" conclusive presumption applies to the Idaho Supreme Court's fundamental error analysis upon the facts of this case. The claim is not procedurally barred because it is not based upon a clearly-expressed independent state law basis. If Idaho desires to assert its sovereignty in fundamental error analysis, either in a blanket manner or on a case-by-case basis, it is free to do so.

This decision will be treated as a merits determination by the Idaho Supreme Court, entitled to deference under 28 U.S.C. § 2254(d). Plaintiff may proceed to the merits of Claim One, that the trial court violated his Sixth and Fourteenth Amendment rights to a trial before a fair and impartial jury by informing the jury that a prior trial had resulted in reversal and remand.

### 2. Claim Four

Claim Four is that Petitioner was deprived of his right to a fair trial when a state witness was permitted to testify from a report rather than from his present recollection after reviewing the report. Respondent asserts that Petitioner failed to raise this claim as a federal claim, arguing only an Idaho evidentiary ruling basis for the claim. (State's Lodging F-1, pp. 36-53.) The Idaho Supreme Court determined that the admitted testimony violated Idaho Rule of Evidence 612, but that the error was harmless. (State's Lodging F-5, pp. 14-18.) No federal precedent or discussion is apparent from the Idaho Supreme Court's decision. Petitioner does not disagree with Respondent's analysis. Accordingly, the Motion to Dismiss Claim Four will be granted.

## ORDER

**IT IS ORDERED:**

1. Respondent's Motion to Dismiss (Dkt. 9) is GRANTED in part (Claim Four), and DENIED in part (Claim One).

2. Respondent shall file an answer to the remaining claims (1, 2, 3, and 5) **within 90 days** after entry of this Order. The answer should also contain a brief setting forth the factual and legal basis of grounds for dismissal and/or denial of the remaining claim. Petitioner shall file a reply (formerly called a traverse), containing a brief rebutting Respondent's answer and brief, which shall be filed and served **within 30 days** after service of the answer. Respondent has the option of filing a sur-reply **within 14 days** after service of the reply. At that point, the case shall be deemed ready for a final decision.

3. No party shall file supplemental responses, replies, affidavits or other documents not expressly authorized by the Local Rules without first obtaining leave of Court.

4. No discovery shall be undertaken in this matter unless a party obtains prior leave of Court, pursuant to Rule 6 of the Rules Governing Section 2254 Cases.

DATED: October 8, 2019

David C. Nye
Chief U.S. District Court Judge