LAWRENCE G. WASDEN
Attorney General
State of Idaho

COLLEEN D. ZAHN
Deputy Attorney General
Chief, Criminal Law Division

MARK W. OLSON, ISB #7555
Deputy Attorney General
Email: mark.olson@ag.idaho.gov
L. LaMONT ANDERSON, ISB #3687
Chief, Capital Litigation Unit
Criminal Law Division
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone: (208) 334-4539
Facsimile: (208) 854-8074

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| DAVID LEON JOHNSON, | ) | CASE NO. 1:18-cv-00216-DCN |
| | ) | |
| Petitioner, | ) | |
| | ) | RESPONDENT'S ANSWER AND |
| vs. | ) | BRIEF IN SUPPORT OF |
| | ) | DISMISSAL OF PETITION FOR |
| JOSH TEWALT, Director of the Idaho | ) | WRIT OF HABEAS CORPUS |
| Department of Correction; and CARMEN | ) | |
| DYAS, Senior Probation Officer for | ) | |
| Interstate Compact Parolees, also with the | ) | |
| Idaho Department of Correction | ) | |
| | | |
| Respondents. | | |

COMES NOW, Respondents, Josh Tewalt and Carmen Dyas, ("state"), by and through

their attorney, Mark W. Olson, Deputy Attorney General, Capital Litigation Unit, and hereby

*RESPONDENT'S ANSWER AND BRIEF IN SUPPORT OF DISMISSAL OF PETITION FOR*
*WRIT OF HABEAS CORPUS - 1*

Answers Petitioner's ("Johnson") Petition for Writ of Habeas Corpus (Dkt. 1), and moves for dismissal of the same.

## I.
## INTRODUCTION AND GENERAL RESPONSES

Johnson is currently on parole under the supervision and custody of the State of Idaho, pursuant to a Superseding Judgment of Conviction and Order of Commitment[1] entered in the District Court of the Fifth Judicial District of the State of Idaho, County of Minidoka, on November 16, 2015, by the Honorable Michael R. Crabtree, after a jury found Johnson guilty of two counts of lewd conduct with a child under 16, I.C. § 18-1508. (State's lodging E-2, pp.88-91.)

All allegations and claims made by Johnson are denied by the state unless specifically admitted herein. Further, the petition does not state grounds, which if true, would entitle him to federal habeas corpus relief. Because Johnson's Petition for Writ of Habeas Corpus was filed after April 24, 1996 (Dkt. 1), the state specifically asserts that the standards and law contained in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") apply to his petition. *See* Lindh v. Murphy, 521 U.S. 320, 336 (1997). Even if the AEDPA did not apply, Johnson's claims fail under *de novo* review.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

The state relies upon the state courts' findings of fact and denies any claim, factually or otherwise, in Johnson's Petition for Writ of Habeas Corpus not specifically found by those

---

[1] Johnson was convicted in 2011, however, a superseding judgment of conviction was necessary to allow Johnson's time to file a direct appeal to begin anew after his appellate rights were reinstated in a post-conviction proceeding. (State's lodging E-2, pp.77-79; 88-91.)

courts.  The state contends that Johnson has failed to demonstrate he is entitled to relief under either an AEPDA or *de novo* review of Claims 1, 2, 3, or 5.

In 2006, Johnson was convicted of two counts of lewd conduct with a minor under sixteen, I.C. § 18-1508, for offenses involving his daughter.  (State's lodgings A-1, pp.1-4; A-2, pp.320-321; B-4, pp.1-2.)  On direct appeal, the Idaho Supreme Court retained the case and found error in the admission of evidence of prior sexual misconduct involving Johnson.  (State's lodging B-4.) The Court vacated the convictions and remanded the case for a new trial.  (Id.)

On remand, a jury again found Johnson guilty of two counts of lewd conduct with a minor under sixteen.  (State's lodging E-3, p.608.)  The trial court imposed unified 15-year sentences with five years fixed on each count, to run concurrently.  (State's lodging E-3, pp.612-614.)  Johnson did not file a timely notice of appeal from his conviction.  Johnson instead filed a post-conviction petition, in which he asserted that his trial counsel was ineffective in numerous respects, including for failing to file a timely notice of appeal.  (State's lodging E-2, pp.118-134.)  Pursuant to a stipulation with the state, the state district court granted Johnson relief on his claim that his trial counsel was ineffective for failing to file a notice of appeal.  (State's lodging E-2, pp.77-79; 88-91.)  The court ordered the re-entry of Johnson's judgment of conviction so that his appellate rights would be restored.  (Id.)  The court summarily dismissed Johnson's other post-conviction claims.  (State's lodgings E-2, pp.274-295.)

Johnson appealed from both the re-entered judgment of conviction and the state district court's summary dismissal of the balance of his post-conviction claims.  (State's lodgings E-2, pp.101-103, 359-363.)  In his direct appeal, Johnson asserted, relevant to this habeas proceeding: (1) a trial court instruction informing the jury pool that a prior trial had occurred and that the Idaho Supreme Court "reversed and remanded" the case for a new trial violated his constitutional

rights; (2) a testifying detective's statement that he "[t]ried to interview Mr. Johnson" violated his Fifth Amendment rights, and the trial court thus erred by denying his motion for a mistrial after the statement was made; (3) the prosecutor committed misconduct by eliciting the detective's testimony about trying to interview him; and (4) cumulative error. (State's lodging F-1.) The Idaho Supreme Court consolidated these cases for appeal (State's lodging E-1), but then severed them before briefing commenced (State's lodging E-7).

The SAPD initially represented Johnson in both appeals. (State's lodgings E-2, pp.107-110, 364-367.) However, the Idaho Supreme Court granted the SAPD's motion to withdraw from the post-conviction appeal after the SAPD failed to identify a viable appellate issue. (State's lodgings G-1, G-2.) The Idaho Supreme Court dismissed the post-conviction appeal after Johnson, then *pro se*, failed to file an Appellant's brief. (State's lodgings G-3, G-4.) The Idaho Supreme Court retained Johnson's direct appeal and affirmed Johnson's convictions. (State's lodging F-5.) Specifically, the Court held: (1) the instruction informing the jury that there was a prior trial did not violate Johnson's constitutional rights because the jury was not informed of a prior *conviction*; (2) while Johnson's rights were violated by the testifying detective's statement that he "[t]ried to interview Mr. Johnson," this error was harmless because the trial court provided a timely curative instruction to the jury; and (3) Johnson failed to demonstrate cumulative error that warranted reversal. (Id.)

In May 2018, Johnson failed a habeas petition in federal district court, commencing this proceeding. (Dkt. 1.) Johnson raised the following claims: (1) the trial court violated his constitutional right to an impartial jury by informing the prospective jury pool that his case had previously been "reversed and remanded" for a new trial; (2) the state violated his right against compelled self-incrimination when a detective testified at trial that he "[t]ried to interview Mr.

Johnson"; (3) the prosecutor committed misconduct by eliciting the detective's testimony as noted above; (4) Johnson was deprived of his right to a fair trial when a state witness was permitted to testify from a report rather than based upon his present recollection; and (5) cumulative error. (Dkt. 1, pp.7-13.)

The state filed a motion for partial summary dismissal and brief in support in which it argued that Claims 1 and 4 in Johnson's habeas petition were procedurally defaulted; and that claim 4 was additionally non-cognizable in a federal habeas petition. (Dkts. 9, 9-1.) Specifically, the state argued that Claim 1 was procedurally defaulted because the Idaho Supreme Court applied a well-established and consistently applied independent state procedural bar – the issue preservation rule – to dispose of the claim; and that Claim 4 was procedurally defaulted because, while Johnson raised a similar claim in state court, he did so pursuant only to state law and not the United States Constitution. (Id.)

This Court entered a Memorandum Decision and Order granting in part, and denying in part, the state's motion for partial summary dismissal. (Dkt. 17.) The Court rejected the state's argument that Claim 1 was procedurally defaulted, and instead construed the Idaho Supreme Court's analysis of that claim (conducted under the Idaho fundamental error test), as constituting a merits-based determination entitled to AEDPA deference. (Id., pp.22-26.) This Court granted the state's motion for partial summary dismissal with respect to Claim 4 and dismissed that claim on the ground that it was procedurally defaulted. (Id., p.27.) The Court ordered the state to file an Answer to Johnson's remaining claims – Claims 1, 2, 3, and 5. (Id.)

III.
## EXHAUSTION OF STATE REMEDIES

Johnson has exhausted state remedies in the sense that there are no available state procedures that exist for the proper presentation of any claims in his habeas petition which may not have been previously submitted to the Idaho Supreme Court.

IV.
## NON-COGNIZABLE CLAIMS

In its Motion for Partial Summary Dismissal and brief in support, the state asserted, as an alternative argument, that Claim 4 was non-cognizable in a federal habeas proceeding. (Dkt. 9-1, pp.15-16.) This Court did not reach this alternative argument. (*See* Dkt. 17, p.27.) The state incorporates its Motion for Partial Summary Dismissal and brief in support and reasserts that this claim is non-cognizable.

V.
## PROCEDURAL DEFAULT

The state previously addressed the issue of procedural default in its Motion for Partial Summary Dismissal and brief in support, and its reply brief, wherein the state asserted that Claims 1 and 4 were procedurally defaulted and that no cause and prejudice exists to excuse the defaults. (Dkt. 9-1, pp.7-16; Dkt. 15, pp.2-10.) As discussed above, this Court rejected the state's procedural default argument with respect to Claim 1, but granted its motion for partial summary dismissal and accepted the state's procedural default argument with respect to Claim 4. (Dkt. 17, pp.22-27.) The state incorporates its Motion for Partial Summary Dismissal and brief in support, and its reply brief, and reasserts that Claims 1 and 4 are procedurally defaulted, and that no cause and prejudice exists to excuse the defaults.

## VI.
### PRESERVATION OF ADDITIONAL DEFENSES INVOLVING PROCEDURALLY DEFAULTED AND NON-COGNIZABLE CLAIMS THE COURT PREVIOUSLY DISMISSED

As detailed above, this Court previously ruled on the state's Motion for Partial Summary Dismissal and dismissed Claim 4 on the ground that it is procedurally defaulted. (Id, p.27.) Based upon the Court's dismissal of that claim, the state hereby reserves and preserves any and all additional defenses that could have been asserted regarding that claim if the Court had (entirely) denied the state's motion.

## VII.
### SPECIFIC ANSDER AND MERITS BRIEFING REGARDING PETITIONER'S REMAINING CLAIMS

A.      Introduction

This Court ordered the state to file an Answer to Claims 1, 2, 3, and 5 in Johnson's habeas petition. (Id, p.27.) The state asserts that Johnson cannot show that he is entitled to relief under an AEPDA or *de novo* review of any of these claims.

B.      Standards Of Law Regarding Habeas Claims And AEDPA

Under 28 U.S.C. § 2241(c), a petition for habeas corpus will be granted only if the petitioner alleges and proves facts showing she is in custody in violation of the Constitution, laws or treaties of the United States. Habeas relief is further restricted by AEDPA, which permits relief only if the state courts' adjudication of a claim:

1.      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

1.    <u>The Contrary To And Unreasonable Application Clauses</u>

The "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1) have independent meaning.  <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002).    A state court's decision is contrary to clearly established federal law, as determined by the United States Supreme Court, if it (1) "applies a rule that contradicts the governing law set forth in our cases," or (2) "confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from our precedent."  <u>Price v. Vincent</u>, 538 U.S. 634, 640 (2003) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406 (2000)).

A state court's decision is an unreasonable application of clearly established federal law, as determined by the Supreme Court, when "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  <u>Williams</u>, 529 U.S. at 413.   An "*unreasonable* application of federal law is different from an *incorrect* application of federal law."  <u>Id.</u> at 410 (emphasis in original).  Johnson must establish the state courts' application of clearly established federal law, as determined by the United States Supreme Court, was "objectively unreasonable."  <u>Wildman v. Johnson</u>, 261 F.3d 832, 837 (9th Cir. 2001).  Moreover, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  <u>Cullen v. Pinholster</u>, 563 U.S. 170, 180-181 (2011).

The standard "is difficult to meet," granting authority to issue the writ only in cases "where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedent."  <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011).  Johnson "must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility

for fair-minded disagreement." Id. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. This does not require citation of Supreme Court cases by the state court or even awareness of such cases, "so long as neither the reasoning nor the result of the state-court decisions contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002). "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

    2.    Determination Of The Facts And State Court Findings

Factual findings fall within two AEDPA provisions, §§ 2254(d)(2) and 2254(e)(1). Lambert v. Blodgett, 393 F.3d 943, 971 (9th Cir. 2004). The Ninth Circuit Court of Appeals has previously applied the two provisions to two different types of challenges based upon whether the challenge was premised "entirely on the state record," which the court considered under § 2254(d)(2) (intrinsic review) or the introduction of facts outside the state court record under § 2254(e)(1) (extrinsic review). Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir. 2004).

    However, as later recognized by the Ninth Circuit, "*Pinholster* eliminated the relevance of 'extrinsic' challenges when [ ] reviewing state-court decisions under AEDPA [ ] because it held that petitioners may introduce new evidence in federal court only for claims that we review *de novo*." Murray v. Schriro, 745 F.3d 984, 999 (9th Cir. 2014). Nevertheless, understanding how §§ 2254(d)(2) and (e)(1) should be viewed in the context of "intrinsic" challenges "presents a more complicated question," id. at 1000, and has yet to be resolved by the Supreme Court, Burt v. Titlow, 571 U.S. 12, 18 (2013), or the Ninth Circuit, Murray, 745 F.3d at 1001.[2] Irrespective

---

[2] Other circuits have also declined to "delve into the relationship between subsections (d)(2) and (e)(1)." Robidoux v. O'Brian, 643 F.3d 334, 338 n.3 (1st Cir. 2011); *see also* Landers v. Warden, 776 F.3d 1288, 1293 n.4 (11th Cir. 2015).

of apparent tension between §§ 2254(d)(2) and (e)(1), the United States Supreme Court has determined "'that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Burt, 571 U.S. at 18 (quoting Woods v. Allen, 558 U.S. 290, 293 (2010)).

While the state recognizes this Court has previously relied upon "five types of unreasonable factual determinations that result from procedural flaws that occurred in state court proceedings," Veenstra v. Blades, 2015 WL 8215701, *4 (D. Idaho 2015) (quoting Taylor, 366 F.3d at 1000-1001), the state doubts the continuing vitality of those factors in light of Pinholster, 563 U.S. at 181, and Murray, 745 F.3d at 1000-1001, which questioned at least part of Taylor. For example, in Taylor, 366 F.3d at 1000-1001, the court opined it is an unreasonable determination of fact "whether the state court should have made a finding of fact but neglected to do so." However, the state is unaware of any precedent mandating state courts articulate every factual finding. Indeed, in Taylor, the Court explained, "we are mindful that the state courts are not required to address every jot and tittle of proof suggested to them, nor need they make detailed findings addressing all the evidence before them." 366 F.3d at 1001 (quotes, citations, and brackets omitted); *see also* Gray v. Zook, 806 F.3d 783, 791 (4th Cir. 2015) ("a state court need not refer specifically to each piece of a petitioner's evidence to avoid the accusation that it unreasonably ignored the evidence"). Rather, "[t]o fatally undermine the state fact-finding process, and render the resulting finding unreasonable, the overlooked or ignored evidence must be highly probative and central to petitioner's claim. In other words, the evidence in question must be sufficient to support petitioner's claim when considered in the context of the full record bearing on the issue presented in the habeas petition." Taylor, 366 F.3d at 1001.

In <u>Taylor</u>, the court also stated that § 2254(d)(2) is met "where the state courts make factual findings infected by substantive legal error" such as when "a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence." 366 F.3d at 1001. However, the court's "example" is in conflict with other precedent that states an evidentiary hearing is not mandated for a court to conclude a petitioner has not met the burden imposed by § 2254(d)(2). <u>Lambert</u>, 393 F.3d at 965-966 ("[W]e will not read into 'adjudicated on the merits' a requirement that the state have conducted an evidentiary hearing, or indeed, any kind of hearing."); *see also* <u>Gray</u>, 806 F.3d at 792 ("A state habeas court need not hold an evidentiary hearing in every case to make reasonable factual determinations.").

More recently, the Ninth Circuit Court of Appeals has clarified <u>Taylor</u>, explaining that § 2254(d)(2) challenges fall into two categories. "First a petitioner may challenge the substance of the state court findings and attempt to show that those findings were not supported by substantial and competent evidence in the state court record. Second, a petitioner may challenge the fact-finding process itself on the ground that it was deficient in some material way." <u>Hibbler v. Benedetti</u>, 693 F.3d 1140, 1146 (9th Cir. 2012) (citation omitted). The Court explained, "Regardless of the type of challenge, the question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Id.</u> (quotation and citation omitted). Addressing the substance of a state court finding, the court reasoned, "it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record," <u>id.</u> (quotes and citations omitted), which "is a daunting standard - one that will be satisfied in relatively few

cases," <u>Maxwell v. Roe</u>, 628 F.3d 486, 500 (9th Cir. 2010). Addressing the state court's procedures, the Ninth Circuit Court of Appeals concluded, "[M]ere doubt as to the adequacy of the state court's findings of fact is insufficient; we must be satisfied that any appellate court to whom the defect in the state court's fact-finding process is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." <u>Hibbler</u>, 693 F.3d at 1146-1147 (quotes and citations omitted). More importantly, even when a state court makes a credibility finding without an evidentiary hearing, that finding is entitled to deference under § 2254(d)(2). <u>Landers v. Warden</u>, 776 F.3d 1288, 1297 (11th Cir. 2015). Therefore, this Court should simply adopt the <u>Pinholster</u> requirements for § 2254(d)(2) claims, which have also been adopted for purposes of § 2254(d)(1). <u>Landers</u>, 776 F.3d at 1295 (citing cases); <u>Winston v. Kelly</u>, 592 F.3d 535, 554 (4th Cir. 2010) (an analysis similar to § 2254(d)(1) applies to § 2254(d)(2)).

Finally, § 2254(d)(2) is even more "'daunting'" and will be "'satisfied in relatively few cases'" "because an 'unreasonable determination of the facts' does not, itself, necessitate relief." <u>Byrd v. Workman</u>, 645 F.3d 1159, 1172 (10th Cir. 2011) (quoting <u>Taylor</u>, 366 F.3d at 1000). "Rather, in order to receive relief under this clause, the petitioner must show that the state court's adjudication of the claims 'resulted in a decision that was *based on* an unreasonable determination of the facts in light of the evidence presented.'" <u>Id.</u> (quoting § 2254(d)(2)) (emphasis in original).

3.    <u>Claims Which Are Reviewed *De Novo*</u>

"[W]hen it is clear that a state court has not reached the merits of a properly raised issue, [this Court] must review it *de novo*." <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002). However, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the

state court's reasoning." Richter, 562 U.S. at 98. Even if a claim must be reviewed *de novo*, "under AEDPA, factual determinations by the state court are presumed correct and can be rebutted only by clear and convincing evidence." Pirtle, 313 F.3d at 1167. However, if the state court's decision was based on an unreasonable determination of the facts, then the Court is not limited by § 2254(d)(1), but proceeds to a *de novo* review of the petitioner's claims, which may include consideration of evidence outside the state court record. Maxwell v. Roe, 628 F.3d 486, 494–495 (9th Cir. 2010).

C.      Under AEDPA or *De Novo* Review, Johnson Is Not Entitled To Relief On Claims 1

In Claim 1, Johnson asserts the trial court violated his constitutional right to an impartial jury by informing the prospective jury pool that there had been a prior trial in his case, and that the case had been "reversed and remanded" by the Idaho Supreme Court for a new trial. (Dkt. 1, pp.7-8.) Johnson cannot show he is entitled to relief under either an AEDPA or *de novo* review of this claim.

At a hearing prior to his second trial, Johnson requested that a questionnaire be submitted to the potential jurors. (State's lodging E-3, p.542.) Shortly after this, the trial court entered an order informing the parties that it would provide the prospective jury pool preliminary instructions along with the questionnaire. (State's lodging E-3, pp.548-551.) The court also provided a copy of these planned instructions to the parties. (Id.) The instructions contained the following language: "There was a prior trial in this case in 2006. Following an appeal, the Idaho Supreme Court reversed and remanded the case to this court for a new trial." (State's lodging E-3, p.550.) Johnson did not object to the instruction. (State's lodgings D-2, p.77; *see also* F-5, pp.3-4.) The trial court later provided these instructions, along with the questionnaire, to the prospective jury pool at a hearing conducted outside the attorneys' presence. (State's lodging D-

1, p.5.)

Before the second jury trial commenced, Johnson filed a motion in limine requesting an order from the trial court prohibiting the state from making any reference to the prior trial. (State's lodging E-3, pp.565-567.) When the motion was subsequently discussed on the morning of the first day of trial, the court informed defense counsel that the jury had already been told of the prior trial at the jury pool questionnaire hearing. (State's lodging D-2, p.74.) Johnson, whose defense counsel informed the court that he had not seen the proposed instruction that was sent to the parties, moved to vacate the trial and summon new jurors who would not be informed of the prior trial. (State's lodging D-2, pp.74-81.) The trial court denied the motion, but ordered that the parties not reference the prior trial in the presence of the jury, other than by reference to the "prior proceeding." (State's lodging D-2, pp.82-83.) On direct appeal, Johnson challenged the trial court's decision not to vacate the trial. (State's lodging F-1, pp.10-25.)

The right to a fair trial before an impartial jury is fundamental to the United States Constitution. U.S. Const. amends. VI, XIV. The impartiality of a jury may be challenged for "actual or implied bias." United States v. Wood, 299 U.S. 123, 133 (1936). Actual bias deals with the specific state of mind of an individual juror and is proved by questioning the juror as to whether he or she can serve with entire impartiality. Id. at 133-134. Implied bias, however, conclusively presumes bias as a matter of law based upon the existence of a specific fact. Id. at 299 133; *see also* Smith v. Phillips, 455 U.S. 209, 222, (1982) (O'Connor, J., concurring) (noting that a finding of implied bias is reserved for "some extreme situations").

While the United States Supreme Court has implicitly upheld a claim of implied juror bias, Leonard v. United States, 378 U.S. 544 (1964) (per curium), the Ninth Circuit Court of Appeals has recently recognized that there is "no clearly established federal law regarding the

issue of implied bias," and that the United States Supreme Court has never "explicitly adopted or rejected the doctrine of implied bias."  Hedlund v. Ryan, 854 F.3d 557, 575 (9th Cir. 2017) (citing Fields v. Woodford, 309 F.3d 1095, 1104 (9th Cir. 2002) (noting that the "Supreme Court has never explicitly adopted (or rejected) the doctrine of implied bias"), *amended by* 315 F.3d 1062 (9th Cir. 2002)); *see also* Anes v. Jackson, 2018 WL 741696 at *3 (6th Cir. 2018) (unpublished) (theory of implied juror bias "is not clearly established for AEDPA purposes") (citation omitted); *but see* Uranga v. Davis, 893 F.3d 282, 288 (5th Cir. 2018) (recognizing circuit split on the issue[3]).

Accordingly, federal habeas relief for implied bias is unavailable on this claim.  Knowles v. Mirzayance, 556 U.S. 111, 122 (2009) ("it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court"); Wright v. Van Patten, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, ... it cannot be said that the state court unreasonably applied clearly established Federal law") (citation, internal brackets and quotations omitted).  In any event, even if the concept of implied juror bias was clearly established for AEDPA purposes, Johnson cannot show that the Idaho Supreme Court unreasonable applied relevant precedent in rejecting Johnson's claim.

As noted above, the United States Supreme Court has held, implicitly, that the fact that a juror knew that the defendant has been *found guilty* or *convicted* by a previous jury for the same crime creates an implied bias because it is inherently prejudicial.  Leonard, 378 U.S. 544; *see*

---

[3] Uranga identifies the Ninth Circuit as being on the side of the split holding that the implied bias doctrine *is* clearly established law.  Uranga, 893 F.3d at 288.  The state asserts that this is incorrect in light of Hedlund, Fields, and the cases cited therein.

*also, e.g.*, <u>Arthur v. Bordenkircher</u>, 715 F.2d 118, 120 (4th Cir. 1983); <u>United States v. Williams</u>,

568 F.2d 464, 470-471 (5th Cir. 1978).

In this case, in rejecting Johnson's claim, the Idaho Supreme Court recognized <u>Leonard</u>

and the constitutional nature of Johnson's challenge.[4] (State's lodging F-5, pp.4-5 (citing <u>State v.</u>

<u>Lankford</u>, 399 P.3d 804 (Idaho 2017).)    However, after noting that the trial court never

mentioned a prior *conviction or guilt* in the present case, the Idaho Supreme Court recognized

that Idaho cases interpreting the United States Constitution clearly "distinguish[] between the

mention [to a jury] of a prior trial and a prior conviction."  (State's lodging F-5, pp.5-6 (quoting

<u>Lankford</u>, 399 P.3d at 813)); *see also* <u>State v. Watkins</u>, 274 P.3d 1279, 1281 (Idaho App. 2012)

("We are not persuaded that [the mention of a prior trial and an appeal] is equivalent to the

disclosure that a previous jury had found him guilty.")  The Idaho Supreme Court therefore

rejected Johnson's argument that his constitutional rights were violated and affirmed the trial

court's decision not to vacate the trial and summons new jurors.[5]  (State's lodging F-5, pp.2-8.)

Even assuming that implied jury bias law is "clearly established," Johnson cannot show that the

Idaho Supreme Court's reasoning constituted an unreasonable application of that law.

---

[4] While the Idaho Supreme Court did not directly cite <u>Leonard</u>, it quoted (State's lodging F-5, p.5), from its own previous opinion in <u>State v. Lankford</u>, including a portion in which it recognized that "[m]any courts, including the Supreme Court of the United States, have held that the fact that a juror knew that the defendant has been found guilty or convicted by a pervious jury for the same crime creates an implied bias and constitutes fundamental error because it is inherently prejudicial."  <u>Lankford</u>, 399 P.3d at 812 (citing <u>Leonard</u>, 378 U.S. at 544.)

[5] In analyzing the issue under the Idaho fundamental error standard, the Idaho Supreme Court also considered Johnson's failure to timely object to the instructions, Johnson's opportunity (which he declined) to ameliorate the issue through proposing a curative instruction or directing *voir dire* to the potential jurors regarding the impact of their knowledge of a prior trial, and the fact that Johnson passed the jury for cause at the conclusion of *voir dire*.  (State's lodging F-5, pp.6-8.)  While this Court rejected the state's argument that this approach to the claim illustrated the application of an independent state procedural bar, the Court also ordered that the Idaho Supreme Court's decision "will be treated as a merits determination."  (Dkt. 17, pp.22-26.)

First, even assuming that implied juror bias law is "clearly established" for the purposes of AEDPA, the state is aware of no United States Supreme Court case foreclosing the distinction drawn by the Idaho Supreme Court in this case, and the numerous other courts noted below, between juror knowledge of a defendant's prior *conviction and guilt*, and juror knowledge of a defendant's prior *trial*. Even if implied juror bias law is clearly established in a general sense, the United States Supreme Court has thus not addressed the specific issue in this case. Therefore, AEDPA relief is precluded for this claim. *See* Knowles, 556 U.S. at 122; Wright, 552 U.S. at 126.

In any event, the Idaho Supreme Court's recognition that Leonard was distinguishable was reasonable and has been shared by numerous other jurisdictions. In Moore v. Parker, 425 F.3d 250, 255-256 (6th Cir. 2005), the Sixth Circuit Court of Appeals observed, in rejecting a habeas petitioner's attempt to apply Leonard to his claim that his constitutional rights were violated when the jury presiding over the penalty phase of his death penalty trial was the same jury which had previously heard prejudicial evidence during the guilt phase of his trial, that the Leonard Court "limited that decision to its facts." *See also* United States v. Parmley, 108 F.3d 922, 923-924 (8th Cir. 1997) (distinguishing Leonard where trial court had informed prospective jurors that Parmley's previous trial had ended in a mistrial).

As the Idaho Supreme Court noted in Lankford (a case often cited to by the Idaho Supreme Court in rejecting Johnson's argument in this case), Lankford, 399 P.3d at 813, the distinction recognized by the Idaho Supreme Court has been noted by many other state appellate courts. *See e.g.*, People v. Boose, 406 N.E.2d 963, 964–966 (Ill. 1980) (holding that a witness' references to defendant's incarceration and appeal were harmless); Brooks v. State, 918 So.2d 181, 208 (Fla. 2005) (state's reference to prior trial without disclosing the result was not

reversible error) (receded from on other grounds); <u>Brown v. Kentucky</u>, 313 S.W.3d 577, 607 (Ky. 2010) (holding that a jury's knowledge that defendant was being retried but not that he had been found guilty, did not violate the defendant's rights). Several courts have gone further and expressly or implicitly distinguished <u>Leonard</u> even where a juror is aware of the prior *conviction* of a defendant. *See e.g.*, <u>People v. Dashnaw</u>, 116 A.D.3d 1222, 1229-1230 (N.Y. App. Div. 2014) (trial court's decision to advise prospective panel of jurors that defendant's conviction had been reversed and that the matter was being retried did not violate defendant's due process rights); <u>State v. Fraga</u>, 864 N.W.2d 615, 621-623 (Minn. 2015) (distinguishing <u>Leonard</u> and declining to hold that a juror in a retrial who knows that the first trial ended in conviction is impliedly biased as a matter of law) ("A juror's knowledge of a first conviction, without more, does not present an extreme situation in which the prospective juror is connected to the litigation at issue in such a way that is highly unlikely that he or she could act impartially during deliberations.")

The reasoning utilized to distinguish <u>Leonard</u> in the present case, other Idaho appellate cases, and the other cases noted above, include: (1) knowledge of the fact that a defendant is being retried, without reference to a defendant's conviction or guilt, is no more prejudicial than the fact that the defendant has been held to answer to a criminal charge; (2) such knowledge, which is often inferred from circumstances such as the nature of the questions put to witnesses or the length of time between the charged conduct and the trial, is not a basis for relief because it is neither extreme nor unfair, but rather is an inevitable part of the criminal process; and (3) jurors need not be totally ignorant of the facts and issues involved in a particular case, and a jury is typically, and repeatedly, instructed that the defendant is presumed to be innocent, that the underlying charge does not constitute proof of guilt, that the jurors must decide the case based only upon the facts presented to them, and that they cannot form any opinions prior thereto. In

light of the reasoning as set forth by numerous jurisdictions as adopted by the Idaho Supreme Court, Johnson cannot demonstrate that the trial court's instruction in this case constitutes one of the "extreme situations" in which implied bias may be established.

Federal habeas relief for Johnson's implied bias claim is unavailable because law pertaining to such claims is not clearly established for purposes of AEDPA. In any event, given the deference owed to the state court's adjudication of Claim 1 under AEPDA, Johnson cannot show that the Idaho Supreme Court's rejection of this claim constituted an unreasonable application of Leonard or any other applicable United States Supreme Court precedent. Johnson also cannot show that the Idaho Supreme Court's conclusion was based upon an unreasonable factual determination. Johnson has therefore failed to show he is entitled to relief on Claim 1 under AEDPA. In any event, for the same reasons as discussed above, Johnson has also failed to establish he is entitled to relief on Claim 1 even under *de novo* review. Claim 1 must therefore be dismissed.

D.    Under AEDPA or *De Novo* Review, Johnson Is Not Entitled To Relief On Claims 2 or 3

In Claim 2, Johnson contends the state violated his right against compelled self-incrimination when a detective testified at trial that he "[t]ried to interview Mr. Johnson." (Dkt. 1, pp.8-9.) In Claim 3, Johnson contends the prosecutor committed misconduct by eliciting this testimony from the detective. (Dkt. 1, pp.9-10.) The Idaho Supreme Court found error with respect to both of these claims, but concluded that the errors were harmless due to a timely curative jury instruction given by the trial court. (State's lodging F-5, pp.8-14.) Johnson cannot show he is entitled to relief under an AEDPA or review of either of these claims.[6] Further, the

---

[6] Because the distinct constitutional claims raised as Claims 2 and 3 resulted in the same "event" (the detective's testimony) whose potential prejudice must be analyzed, the state discusses these claims collectively for purposes of AEDPA review.

state asserts that even under a *de novo* review, the detective's passing and indirect reference to Johnson's silence was harmless pursuant to <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993). Finally, should this Court reach a *de novo* review of Claim 3, the state asserts that, contrary to the Idaho Supreme Court's conclusion in this case, the prosecutor did not commit misconduct pursuant to the relevant standard set forth in <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637 (1974).

Federal habeas "petitioners 'are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" <u>Davis v. Ayala</u>, __ U.S. __, 135 S.Ct. 2187, 2197 (2015) (quoting <u>Brecht</u>, 507 U.S. at 637.) "[R]elief is proper only if the federal court has 'grave doubt about whether a trial error of federal law had '[a] substantial and injurious effect or influence in determining the jury's verdict.'" <u>Id.</u> at 2197-98 (quoting <u>O'Neal v. McAninch</u>, 513 U.S. 432, 436 (1995)). This involves more than a "'reasonable possibility' that the error was harmful." <u>Id.</u> at 2198 (quoting <u>Brecht</u>, 507 U.S. at 637). "Review for harmless error under *Brecht* is more forgiving to state court errors than the harmless error standard the Supreme Court applies on its direct review of state court convictions." <u>Larson v. Palmeteer</u>, 515 F.3d 1057, 1064 (9th Cir. 2008) (internal quotations and citation omitted). "*Brecht* requires that we independently evaluate whether an error had substantial and injurious effect or influence in determining the jury's verdict. While there is no burden of proof *per se*, we look to the State to instill in us a fair assurance that there was no effect on the verdict." <u>Shaw v. Terhune</u>, 380 F.3d 473, 478 (9th Cir. 2004) (internal quotations and citations omitted).

However, if the state court conducts a harmless error analysis under <u>Chapman v. California</u>, 386 U.S. 18 (1967), that analysis must first be reviewed under 28 U.S.C. § 2254(d), which requires that the petitioner establish the state court's adjudication of the alleged error was

contrary to, or involved an unreasonable application of, Supreme Court precedent, or was based on an unreasonable determination of facts.  Davis, 135 S.Ct. at 2198.  Therefore, for Johnson to prevail, he must establish that the Idaho Supreme Court applied Chapman in an objectively unreasonable manner.  Id. at 2199.

In Greer v. Miller, 483 U.S. 756, 766 n.8 (1987), the United States Supreme Court recognized that curative instructions will generally cure error except in rare circumstances:

> We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an "overwhelming probability" that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be "devastating" to the defendant.

(citing Richardson v. Marsh, 481 U.S. 200, 208 (1987); Bruton v. United States, 391 U.S. 123, 136 (1968).)

In Miller, the United States Supreme Court concluded that, considering the sequence of events in that case, which consisted of "a single question, an immediate objection, and two curative instructions," the record "clearly indicate[d] that the prosecutor's improper question did not violate Miller's due process rights.")  Miller, 483 U.S. at 766 (footnote omitted).)  The Court thus implicitly did not find an "overwhelming probability" that the jury would be unable to follow the instruction.  See id. at 761-767.

In this case, in the context of the detective's general testimony about his investigation (State's lodging D-2, pp.712-714, 724-726), the prosecutor asked the detective whether he had interviewed anyone else in his investigation (State's lodging D-2, p.726).  The detective responded that he "[t]ried to interview Mr. Johnson."  (Id..)  Johnson objected and moved for a mistrial outside of the presence of the jury.  (Id., pp.727.)  The trial court took a recess to research the issue and then entertained argument from the parties.  (Id., pp.727-744.)  The court

sustained Johnson's objection to the statement, but deferred its decision on Johnson's motion for

a mistrial until it could ascertain any prejudice from the detective's statement that may become

evident through the development of the trial.[7]  (Id..)  The court also elected to provide the

following curative instruction to the jury:

> Now, we're at the situation where just before we recessed there was [an] objection to an answer given by Detective Snarr, and so I will now make a formal ruling on that objection, and that ruling is this:  The objection is sustained.  The last answer given by Detective Snarr is stricken.  A defendant has the constitutional right to remain silent.  The decision whether to exercise this right is left to the defendant.  You, the members of the jury, are instructed to disregard the last answer given and to not consider that answer during your deliberations.  You are further instructed that you are not to draw any inferences at all from the testimony that has been stricken.

(Id, pp.745-746.)

On appeal, the Idaho Supreme Court found constitutional error in both in the prosecutor's

eliciting of the statement, and in the detective's statement itself.  (State's lodging F-2, pp.8-14.)

The Court did not specifically cite the Chapman harmless error standard.  (See id.)  It instead

utilized the Idaho standards applicable to a trial court's decision whether to grand a motion for a

mistrial.  (Id., p.8-9.)  However, the Court also cited and relied upon Greer v. Miller and the

United States Supreme Court's discussion therein regarding curative instructions.  (Id., p.11.)  In

Miller, the United States Supreme Court specifically cited the Chapman harmless error test and

discussed curative instructions in the context of its analysis of whether the Illinois Supreme

Court properly applied Chapman after a prosecutor attempted to ask an improper question in the

presence of the jury.  Miller, 483 U.S. at 765-766.  Additionally, in separately analyzing the

potential prejudice of the detective's statements pursuant to Johnson's prosecutorial misconduct

---

[7] At the conclusion of the state's case, the trial court denied Johnson's mistrial motion, finding that, after considering the evidence and the examination of all of the witnesses, any prejudice from the detective's statement had been "vitiated."  (State's lodging D-2, pp.1084-1085.)

claim, the Idaho Supreme Court noted that, pursuant to <u>State v. Perry</u>, 245 P.3d 961, 979 (Idaho 2010), "[w]here a defendant demonstrates that prosecutorial misconduct has occurred, and such misconduct was followed by a contemporaneous objection by defense counsel, such error shall be reviewed for harmless error." (State's lodging F-5, p.13.) In <u>Perry</u> itself, the Idaho Supreme Court specified that such review must be accomplished "in accordance with *Chapman*." <u>Perry</u>, 245 P.3d at 979. The state therefore asserts the Idaho Supreme Court's harmless error analysis and implicit application of <u>Chapman</u> is entitled to AEDPA deference.

The Idaho Supreme Court's application of <u>Chapman</u> and reliance upon <u>Miller</u> was reasonable. The Court reasonably concluded that this was not one of the rare situations whose circumstances indicated an "overwhelming probability" that the jury would be "unable to follow the court's instructions;" or that there was a "strong likelihood" that the effects of the evidence would be "devastating" to the defendant. <u>See Miller</u>, 483 at 766 n.8. As the Court noted (State's lodging F-5, p.11), at no point did the prosecutor encourage or invite the jury to draw any inferences from the detective's comment. Further, the prosecutor's question called for a simple yes or no answer to whether the detective interviewed anyone else. After the detective made the impermissible comment, the court provided a timely, thorough, and definitive curative instruction. The Court additionally found that there was no reason in the record to believe that the jury ignored this instruction and, instead, drew impermissible inferences of guilt from the stricken comment. The Idaho Supreme Court's approach to this issue was thus entirely reasonable and constituted a proper application of <u>Chapman</u> and <u>Miller</u>.

Further, while not expressly noted by the Idaho Supreme Court, the error was harmless in light of the strength and nature of the evidence presented of Johnson's guilt at the trial. Johnson's victim testified about the charged conduct Johnson engaged in. (State's lodging D-2,

pp.755-802.)  The prosecutor's closing argument opened with, focused on, and extensively quoted from, the victim's testimony.  (Id., pp.1227-1252.)  Thus the critical determinations facing the jury at trial were related to the victim's credibility – which the detective's impermissible statement did not implicate.

Given the deference afforded to the state court's adjudication of Claims 2 and 3 under AEPDA, Johnson cannot show that the Idaho Supreme Court's rejection of these claims constituted an unreasonable application of Chapman or any other applicable United States Supreme Court precedent.  For all of the same reasons as discussed above, the errors were also harmless even pursuant to a *de novo* harmless error review conducted in accordance with Brecht.

Finally, the state asserts that if this Court reaches a *de novo* review of Claim 3 (Johnson's prosecutorial misconduct claim), that, contrary to the Idaho Supreme Court's conclusion in this case, the prosecutor did not commit misconduct pursuant to the relevant standard set forth in Donnelly v. DeChristoforo, 416 U.S. 637 (1974) and Darden v. Wainwright, 477 U.S. 168, 181 (1986).

The standard for a claim of prosecutorial misconduct on habeas review is a "narrow one of due process, and not the broad exercise of supervisory power."  Darden, 477 U.S. at 181 (quoting Donnelly, 416 U.S. at 642.)  A prosecutor's comments or actions that may be considered inappropriate under the rules of fair advocacy, or even reversible error on direct review, will not warrant federal habeas relief unless the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Donnelly, 416 U.S. at 643.  It "is not enough that the prosecutor's remarks were undesirable or even universally condemned."  Darden, 477 U.S. at 180-181.  This standard allows a federal court to grant relief when the state-court trial was fundamentally unfair but avoids interfering in state-court

proceedings when errors fall short of constitutional magnitude.  Drayden v. White, 232 F.3d 704, 713 (9th Cir. 2000).

In this case, the Idaho Supreme Court found that the prosecutor committed misconduct, in part, due to its prior precedent holding, "when an officer of the State gives any unsolicited testimony that is gratuitous and prejudicial to the defendant, that testimony will be imputed to the State for the purposes of determining prosecutor misconduct."  (State's lodging F-5, p.12 (quoting State v. Ellington, 253 P.3d 727, 735 (Idaho 2010).)  The state has not found broader support for this concept in Donnelly, Darden, or other relevant federal precedent interpreting the United States Constitution.  Further, as acknowledged by the Idaho Supreme Court, the prosecutor asked a yes or no question that did not directly elicit the detective's impermissible statement; that the "prosecutor's question did not have a high probability of eliciting inadmissible testimony"; and that, perhaps most importantly, "the line of questioning by the State was for the purpose of laying a foundation of the detective's investigation."  (State's lodging F-5, pp.11-12; see also State's lodging D-2, pp.729-735 (the prosecutor's explanation to the trial court regarding the purpose of the question, and his denial that the question was intended to elicit an impermissible comment on Johnson's right to remain silent).)  The state asserts that, contrary to the Idaho Supreme Court's conclusion, the prosecutor did not commit misconduct where the Idaho Supreme Court specifically found that his question was posed for a proper purpose.

For the forgoing reasons, Johnson cannot demonstrate that he is entitled to relief under either an AEDPA or de novo review of Claims 2 and 3.  These claims must therefore be dismissed.

E.    Under AEDPA or *De Novo* Review, Johnson Is Not Entitled To Relief On Claims 5

In Claim Five, Johnson asserts cumulative error.  (Dkt. 1, pp.11-12.)  Johnson raised a similar cumulative error claim to the Idaho Supreme Court in his direct appeal.  (State's lodging F-1, p.53.)  The Idaho Supreme Court rejected the claim after concluding that the errors it had found in the case (the trial court permitting a witness to improperly refresh his memory, the trial court incorrectly concluding that the state committed a discovery violation, and the detective's testimony that he "[t]ried to interview Mr. Johnson") were not, even viewed cumulatively, "of such magnitude that Johnson was denied a fair trial."  (State's lodging F-5, p.20.)  Johnson cannot show he is entitled to relief under an AEDPA or *de novo* review of this claim.

The Ninth Circuit Court of Appeals has determined that the doctrine of cumulative error has been clearly established by the United States Supreme Court.  Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007).  Under cumulative error principles, "the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair," even if each of the errors, taken alone, would not require reversal. Id.  Habeas relief is warranted for cumulative error "only where the errors have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Id. (quoting Donnelly, 416 U.S. at 643).  This occurs when a petitioner can show that the prejudice standard set forth in Brecht, 507 U.S. at 637, has been met.  Parle, 505 F.3d at 927. "In simpler terms, where the combined effect of individually harmless errors renders a criminal defense far less persuasive than it might otherwise have been, the resulting conviction violates due process." Id. (alteration and internal quotation marks omitted).

The state first notes that one of these alleged errors, that the trial court permitted a witness to improperly refresh his memory, corresponds to a procedurally defaulted habeas claim

from this proceeding, Claim 4. (Dkt. 17, p.27.) This claim may therefore not be a part of a cumulative error claim raised in a federal habeas petition. *See* <u>Cuesta-Rodriguez v. Carpenter</u>, 916 F.3d 885, 916 (10th Cir. 2019); <u>Hughes v. Dretke</u>, 412 F.3d 582, 597 (5th Cir. 2005). One of the other alleged errors, regarding the alleged discovery violation, was a state-law matter that Johnson did not attempt to raise as a habeas claim. (*See* Dkt. 1.) This claim, too, should not be a part of a cumulative error analysis. *See* <u>Derden v. McNeel</u>, 978 F.2d 1453, 1457-1458 (5th Cir. 1992) (non-cognizable state-law errors cannot be a part of a federal habeas cumulative error analysis unless the errors individually amount to a due process violation.)

This leaves only one "event" – the officer's testimony that he "[t]ried to interview Mr. Johnson" – to analyze under a cumulative error framework. While this event was the subject of two distinct constitutional habeas claims (Claims 2 and 3), an analysis of these claims, as the state noted above, completely overlaps because it resulted in only a single event whose potential prejudice must be analyzed. Therefore, the state asserts, Johnson is not entitled to relief pursuant to the cumulative error doctrine because there are not multiple errors to cumulate.

In any event, if this Court concludes that the cumulative error doctrine is applicable to this case, the state adopts the reasoning as set forth by the Idaho Supreme Court (State's lodging F-5, p.20), and contends that the errors were simply not so significant as to have denied Johnson a right to a fair trial. Unlike in <u>Parle</u>, 505 F.3d at 928-934, the errors found by the Idaho Supreme Court did not have a cumulative effect, in that none of them related directly to Johnson's defense and theory of the case. The detective's indirect reference to Johnson's silence, the court's error in finding that the state committed a discovery violation (which was deemed harmless because the error was in Johnson's favor (State's lodging F-5, pp.18-22), and the state witness's improper refreshing of his memory (which was deemed harmless because the same

information was properly admitted later at trial) (State's lodging F-5, pp.17-18), all, instead, related to independent matters that did not, as in <u>Parle</u>, hinder Johnson's ability to present his defense. Johnson therefore cannot demonstrate he is entitled to relief under either an AEDPA or *de novo* review of this claim.

VIII.

**<u>AVAILABILITY OF STATE COURT RECORDS</u>**

Contemporaneous with the filing of its Motion and Brief in Support of Partial Summary Dismissal, the state previously lodged relevant portions of the state court record with this Court pursuant to Rule 5 of the Rules Governing Section 2254 Cases. (Dkt. 8.)

IX.

**<u>CONCLUSION</u>**

WHEREFORE, the state prays:

1.      That the writ be denied, or, if granted, that all relief be denied;

2.      That the Court dismiss the petition with prejudice.

DATED this 24th day of January, 2020

/s/_____
MARK W. OLSON
Deputy Attorney General
Capital Litigation Unit

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on or about the 24th day of January, 2020, I served a true and correct copy of the foregoing document by filing it in the ECF system.

| | | |
|---|---|---|
| Craig Durham | _____ | U.S. Mail |
| Ferguson Durham, PLLC | _____ | Hand Delivery |
| 223 N. 6th Street | _____ | Overnight Mail |
| Suite 325 | _____ | Facsimile |
| Boise, ID 83702 | __X__ | Electronic Court Filing |

/s/ _____
MARK W. OLSON
Deputy Attorney General
Capital Litigation Unit