LAWRENCE G. WASDEN
Attorney General
State of Idaho

COLLEEN D. ZAHN
Deputy Attorney General
Chief, Criminal Law Division

MARK W. OLSON, ISB #7555
Deputy Attorney General
E-mail: mark.olson@ag.idaho.gov
L. LaMONT ANDERSON, ISB #3687
Deputy Attorney General
Chief, Capital Litigation Unit
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone: (208) 334-4539
Facsimile: (208) 854-8074

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVID LEON JOHNSON, | CASE NO. 1:18-CV-00216-DCN |
| Petitioner, | |
| vs. | RESPONDENT'S SUR-REPLY IN SUPPORT OF ITS ANSWER AND BRIEF IN SUPPORT OF DISMISSAL OF PETITION FOR WRIT OF HABEAS CORPUS |
| JOSH TEWALT, Director of the Idaho Department of Correction; and CARMEN DYAS, Senior Probation Officer for Interstate Compact Parolees, also with the Idaho Department of Correction, | |
| Respondent. | |

COMES NOW, Respondents, Josh Tewalt, IDOC Director; and Carmen Dyas, Senior

Probation Officer for Interstate Compact Parolees ("state") by and through their attorney, Mark

W. Olson, Deputy Attorney General, Capital Litigation Unit, and hereby submits this sur-reply brief in response to Petitioner's ("Johnson") reply brief (Dkt. 23), which was filed in response to the state's Answer and Brief in Support of Dismissal (Dkt. 19), of Johnson's Petition for Writ of Habeas Corpus and the remaining claims therein - Claims One, Two, Three, and Five.[1] (Dkt. 1).

While the state generally relies upon the arguments set forth in its Answer (Dkt. 19), it will respond to some of the arguments contained in Johnson's reply brief (Dkt. 23).

A:  Claim One

In Claim 1, Johnson asserts the trial court violated his constitutional right to an impartial jury by informing the prospective jury pool that there had been a prior trial in his case, and that the case had been "reversed and remanded" by the Idaho Supreme Court for a new trial. (Dkt. 1, pp.7-8.) In its Answer, the state argued that Johnson was not entitled to relief under AEDPA because, as recently reiterated by the Ninth Circuit Court of Appeals, the United States Supreme Court has never explicitly adopted the doctrine of implied jury bias, and therefore, the Idaho Supreme Court's interpretation of the Constitution and application of relevant precedent to Johnson's claim could not have constituted an unreasonable application of clearly established United States Supreme Court precedent. (Dkt. 19, pp.13-19.) In reply, Johnson argues, among other things, that the Idaho Supreme Court's rejection of his claim was based upon an unreasonable *factual* determination. (Dkt. 23, pp.3-6.) Specifically, Johnson asserts that the trial court's instruction that there had been a prior trial and that the case had been "reversed and remanded," effectively informed the prospective jury that Johnson had previously been *convicted*; and therefore, the Idaho Supreme Court's reliance on precedent concerning situations

---

[1] In a Memorandum Decision and Order, this Court granted the state's motion for summary dismissal with respect to Claims Four (but denied it with respect to Claim One). (Dkt. 17.)

where juries are informed merely of a prior *trial and appeal* was erroneous, and based upon an unreasonable factual determination, entitling him to *de novo* review. (Id.) Johnson's contentions fail.

In its Answer, the state explained how the Ninth Circuit Court of Appeals has held that the doctrine of implied juror bias is not clearly established by the United States Supreme Court, and that accordingly, federal habeas relief in unavailable for a claim of implied jury bias. (Dkt. 19, pp.14-15 (citing Hedlund v. Ryan, 854 F.3d 557, 575 (9th Cir. 2017); Fields v. Woodford, 309 F.3d 1095, 1104 (9th Cir. 2002)). Because Johnson waved any claim of *actual* jury bias by declining to question individual jurors on the matter during *voir dire*, and by passing the jury for cause (State's lodging F-5, pp.6-8), his habeas claim relies upon the *implied* jury bias doctrine, for which no clearly established federal precedent exists. Johnson therefore cannot show that the Idaho Supreme Court unreasonably applied any such precedent. *See* Knowles v. Mirzayance, 556 U.S. 111, 112 (2009); Wright v. Van Patten, 552 U.S. 120, 126 (2008). Johnson does not appear to dispute this assertion in his reply brief. (*See* Dkt. 23, pp.3-9.)

Instead, Johnson seeks to obtain *de novo* review from this Court by characterizing the Idaho Supreme Court's conclusion as being based upon an unreasonable *factual determination*. (Id., pp.5-6.) As noted above and in the state's Answer, courts (including the Idaho appellate courts) which have reached the merits of implied jury bias claims of this type have placed such claims into one of two categories – one in which the jury becomes aware there has been a prior *trial and appeal* in the same case; and one in which the jury becomes aware that the defendant has previously been *convicted* in the same case. (*See* State's lodging F-5, p.5-6.) In this case, the Idaho Supreme Court concluded that the trial court's "reversed and remanded" instruction belonged to the former category of cases (where jury is informed of prior trial and appeal) – and

was in fact very similar to an instruction provided by the trial court in State v. Lankford, 399 P.3d 804, 812 (Idaho 2017), in which the Idaho Supreme Court also placed the challenged instruction in the former category of cases.[2] (Id., pp.4-6.) Therefore, as in Lankford, the Idaho Supreme Court declined to find fundamental constitutional error in Johnson's case. (Id.)

Johnson now asserts that the Idaho Supreme Court's decision to place the trial court's "reversed and remanded" instruction into the former category of cases where the jury becomes aware only of a prior trial and appeal, constituted an unreasonable factual determination because "the way the law works" and "common sense" dictate that a case is only "reversed and remanded" when there is a conviction. (Dkt. 23, pp.5-6.) This Court should not accept Johnson's invitation to characterize the Idaho Supreme Court's application of legal precedent to the unique facts before it as a factual determination.

The relevant factual determination made by the Idaho Supreme Court with respect to this issue involved properly recognizing what, in fact, the challenged instruction was. Here, the Idaho Supreme Court clearly recognized that the trial court informed the prospective jury pool that "[t]here was a prior trial in this case in 2006. Following an appeal, the Idaho Supreme Court reversed and remanded the case to this court for a new trial." (State's lodging F-3.) This instruction, which the Idaho Supreme Court accurately quoted, was the only relevant *fact* necessary to the Court's subsequent resolution of this claim.

With this fact of this trial court instruction clearly established and recognized, the Idaho Supreme Court was next tasked with applying constitutional law the instruction to determine

---

[2] In Lankford, the challenged instruction provided: "There was a prior trial in Idaho County in 1984 for the offenses for which he is now charged. And an Appeals Court held that Mr. Lankford was not effectively represented and that his trial was therefore unfair." Lankford, 399 P.3d at 813.

RESPONDENT'S SUR-REPLY IN SUPPORT OF ITS ANSWER AND BRIEF IN SUPPORT OF DISMISSAL OF PETITION FOR WRIT OF HABEAS CORPUS - 4

whether a constitutional violation had occurred. No binding appellate case contained precisely the same jury instruction as was present in this case. Therefore, the Idaho Supreme Court recognized the landscape of constitutional law on this issue, and applied precedent, which, in its judgment, more closely resembled the facts of this case than did other precedent. This is a classic *application of law* that, if not precluded for the reasons set forth above, could be reviewed by this Court pursuant to 22 U.S. Code § 2254(d)(1), which permits federal courts to grant habeas relief only where a state court's decision was "contrary to, or involved an unreasonable application of," clearly stablished federal law. Johnson's contrary characterization of what constitutes a factual determination would render almost everything a state appellate court does an exercise of fact-finding. Instead, here, the Idaho Supreme Court's application of constitutional appellate precedent to the facts of the case – the challenged instruction – constituted a legal determination in an area of law for which no clearly established United States Supreme Court precedent exists.

Finally, even if the Idaho Supreme Court's decision to apply particular constitutional precedent to the trial court's instruction constituted a factual determination in this case, the factual determination was reasonable for all of the reasons set forth in the state's Answer with respect to why the Idaho Supreme Court's determinations on the issue were reasonable. (Dkt. 19, pp.15-19.) The prospective jury was not informed that Johnson had been previously convicted, and therefore, the Idaho Supreme Court was not required to analyze the issue as if it had been. It is important to reiterate that the distinction drawn in Idaho (and numerous other jurisdictions in this context), is not simply between circumstances where the jury is informed of a prior *trial* v. a prior *conviction*; but is instead between circumstances where the jury is informed of a prior *trial and appeal* v. a prior *conviction*. Therefore, as in both this case and <u>Lankford</u>,

language in an instruction that indicates an appeal – such as "reversed and remanded" and "Idaho Supreme Court," still reasonably place the instruction in the category of cases in which the jury is informed of a prior trial and appeal. Thus, to the extent the Idaho Supreme Court made any factual determinations with respect to this claim other than accurately recognizing what the trial court actually told the prospective jury, such determinations were reasonable.

Johnson has failed to establish he is entitled to AEDPA relief on Claim 1. In the alternative, for all of the reasons already set forth by the state in its Answer (id.), even if the implied jury bias doctrine *was* clearly established, Johnson cannot show that the Idaho Supreme Court's rejection of the claim constituted an unreasonable application of that federal law, particularly when viewed through the lenses of the Idaho fundamental error standard applied by the Idaho Supreme Court in this case. For the same reasons, Claim 1 fails even under *de novo* review.

B: Claims Two And Three[3]

In Claim 2, Johnson contends the state violated his right against compelled self-incrimination when a detective testified at trial that he "[t]ried to interview Mr. Johnson." (Dkt. 1, pp.8-9.) In Claim 3, Johnson contends the prosecutor committed misconduct by eliciting this testimony from the detective. (Dkt. 1, pp.9-10.) In its Answer, the state argued that the Idaho Supreme Court reasonably applied the Chapman v. California, 386 U.S. 18 (1967) harmless error test in determining that these errors were harmless; and that, in any event, the errors were harmless under a habeas *de novo* review pursuant to Brecht v. Abrahamson, 507 U.S. 619

---

[3] Because the distinct constitutional claims raised as Claims 2 and 3 resulted from the same "event" (the detective's testimony) whose potential prejudice must be analyzed, both parties have discussed these claims collectively for purposes of AEDPA review. (Dkt. 19, p.19 n.6; Dkt. 23, p.9, n.1.)

(1993). (Dkt. 19, pp.19-25.) In reply, Johnson argued that the Idaho Supreme Court failed to apply Chapman, as indicated by its lack of citation to that case and the absence, aside from one passing reference, of "beyond a reasonable doubt" language. (Dkt. 23, pp.9-13.) Johnson further contends that a proper application of Brecht reveals that the errors were not harmless. (Id., pp.13-14.) Johnson's contentions fail.

As Johnson correctly notes, the Idaho Supreme Court did not specifically cite Chapman or specifically apply the familiar "beyond a reasonable doubt" language associated with that case's harmless error standard. (*See* State's lodging F-5, pp.8-14.) However, neither is necessary for this Court to afford AEDPA deference in this case. *See* Early v. Packer, 537 U.S. 3, 8 (2002) ("[AEDPA] does not require citation of our cases - indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."); *see also* Peterson v. Warren, 311 Fed.Appx. 798, 804 (6th Cir. 2009) (unpublished) ("[a]lthough the court neither cited *Chapman* by name nor explicitly invoked *Chapman's* 'beyond a reasonable doubt' language in its discussion of the Confrontation Clause error, it discussed [other cases which applied Chapman]. Nowhere does the court's analysis suggest that it employed any standard other than the *Chapman* standard."); Roman v. Hedgpeth, 2008 WL 4553091 (C.D. Cal. 2008) (noting that "[m]any circuits, including the Ninth Circuit, instead of using the 'harmless beyond a reasonable doubt' language, often state that the government must prove that 'there is no reasonable possibility' that the error influenced the verdict," and recognizing that "[t]his standard is equivalent to the harmless beyond a reasonable doubt standard." (citations omitted).)

In its harmless error analysis of both Claims 2 and 3, the Idaho Supreme Court cited State v. Perry, 245 P.3d 961 (Idaho 2010), in which the Court specified that a harmless error analysis

of objected-to constitutional error must be accomplished "in accordance with *Chapman*." (State's lodging F-5, pp.9, 13.) With respect to Claim 2, the Idaho Supreme Court expressly quoted from the portion of Perry providing that where an Idaho appellate court finds objected-to constitutional error, "the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt that the constitutional violation did not contribute to the jury's verdict." (Id., p.9 (citing Perry, 245 P.3d at 979). The Idaho Supreme Court could thus not apply Perry without applying Chapman, and there is no indication in the record that it was not applying Perry. This Court recently concluded similarly in rejecting the petitioner's argument in Ellis v. Little, 2018 WL 6540219 at *8 n.6. (D. Idaho 2018) (citation to Packer omitted):

> Though the court of appeals did not cite *Chapman*, such citation is not required. The Idaho Court of Appeals did cite *State v. Perry*, an Idaho case that discussed *Chapman*. *See Perry*, 245 P.3d 961, 973 (2010) ("In Idaho, the harmless error test established in *Chapman* is now applied to all objected-to error.").

The Idaho Supreme Court also relied upon Greer v. Miller, 483 U.S. 756, 766 n.8 (1997), a United States Supreme Court case which held that, in the context of a Chapman harmless analysis, curative instructions generally cure errors except in rare situations whose circumstances indicate an "overwhelming probability" that the jury would be "unable to follow the court's instructions;" or that there was a "strong likelihood" that the effects of the improper evidence would be "devastating to the defendant." (Id., pp.21-24.) Thus, a state court cannot apply Miller without applying Chapman.

Johnson also argues that even if the Idaho Supreme Court applied Chapman, this application was unreasonable, and that the detective's testimony was not harmless under either Chapman or Brecht. (Dkt. 23, pp.13-14.) The state disagrees with Johnson's characterization of the underlying trial as a "close case." Instead, it was a trial which hinged primarily on the jury's

evaluation of the credibility of the victim, who testified about Johnson's abuse (State's lodging D-2, pp.755-802). This evaluation, based upon the jury's first-hand observation of the victim's trial testimony, should not be lightly disregarded or questioned in light of the detective's short, vague, not-entirely responsive answer that he "tried to interview Mr. Johnson," particularly where the prosecutor did not encourage or invite the jury to draw any inferences from the comment, and where the comment was stricken and the cured by an adequate jury instruction.

The Idaho Supreme Court therefore did not unreasonably apply Chapman in concluding that this was not one the rare cases, pursuant to Miller, where it could not be presumed that the jury followed an appropriate curative instruction. For similar reasons, Johnson is not entitled to relief under a Brecht harmless error review of Claims 2 and 3.

C:   Claim Five

In Claim Five, Johnson asserts cumulative error. (Dkt. 1, pp.11-12.) In its Answer, the state asserted that Johnson failed to demonstrate he was entitled to relief under an AEDPA or *de novo* of this claim. (Dkt. 19, pp.26-28.) Specifically, the state asserted that because procedurally defaulted and non-cognizable claims could not be a part of a federal habeas cumulative error claim, and because the only remaining alleged prejudice to cumulate concerned the detective's testimony that he "[t]ried to interview Mr. Johnson," there was no error to cumulate. (Id.) In reply, Johnson asserted that his habeas cumulative error claim includes the error found by the Idaho Supreme Court with respect to procedurally defaulted Claim Four,[4] and that the

---

[4] In Claim Four, Johnson asserted he was deprived of his constitutional right to a fair trial when a state witness was permitted to testify from a report rather than based upon his present recollection. (Dkt. 1, pp.10-11.) In its brief in support of its motion for partial summary dismissal, the state argued that this claim was both procedurally defaulted and non-cognizable because it was rooted in state law. (Dkt. 9-1, pp.12-13.) This Court dismissed the claim on the ground that it was procedurally defaulted. (Dkt. 17, p.27.)

cumulation of the impact of this error and the detective's testimony demonstrates he is entitled to relief. (Dkt. 23, pp.14-17.) Johnson's contentions fail.

In its Answer, in support of its contention that procedurally defaulted Claim 4 could not be considered in Johnson's cumulative error claim, the state cited Cuesta-Rodriguez v. Carpenter, 916 F.3d 885, 917-918 (10th Cir. 2019), Hughes v. Dretke, 412 F.3d 582, 597 (5th Cir. 2005), and Derden v. McNeel, 978 F.2d 1453, 1457-1458 (5th Cir. 1992). In reply, Johnson notes that in Parle v. Runnels, 505 F.3d 922, 927-934 (9th Cir. 2007), an often-cited habeas cumulative error case discussed in the state's Answer, the Court cumulated numerous "state law evidentiary errors." (Dkt. 23, p.15.) However, there is no indication in Parle that any of the cumulated claims of error were procedurally defaulted as Claim 4 was in this case, nor is there any indication that the claims were rooted exclusively in state law and contained no constitutional component. See Parle, 505 F.3d at 927-935. Further, a review of Parle, as well as the underlying federal district court decision, Parle v. Runnels, 448 F.Supp.2d 1158 (N.D. Cal. 2006), reveals that Parle's evidentiary challenges primarily concerned his constitutional right to put on a defense as set forth in California v. Trombetta, 467 U.S. 479 (1984), and his constitutional right to privacy. Parle therefore does not stand for the proposition that procedurally defaulted claims (or non-constitutional claims) can be considered in a habeas cumulative error analysis. Numerous federal district courts in the Ninth Circuit have concluded as much, even after Parle. *See e.g.*, Meister v. Ramirez, 2020 WL 1932598 at *5 (D. Idaho 2020) "Because Claims 1 and 2 are procedurally defaulted, the portion of Petitioner's cumulative error claim that relies on those claims is also procedurally defaulted." Sanchez v. Covello, 2019 WL 4854856 at *26 (C.D. Cal. 2019) ("[t]o the extent [petitioner] asserts cumulative error based on any procedurally barred

claims, he may not do so."); Bolduc v. Ndoh, 2019 WL 7206457 at *33 (C.D. Cal. 2019) ("in a cumulative error analysis, a court may not consider claims that are procedurally defaulted.")

There is good reason not to cumulate procedurally defaulted and non-constitutional claims in a federal habeas cumulative error analysis. The merits of such claims are not before the federal court, either because they are entirely state-law in nature, or because the state court never had the opportunity to decide the merits of the claims. Consideration of the merits of such claims in a habeas cumulative error analysis would thus be contrary to the policy of federal-state comity associated with federal habeas proceedings, *see* Preiser v. Rodriguez, 411 U.S. 475, 491 (1973), and the policy and law of deference associated with AEDPA.

Finally, even if Claim 4 could be a part of a habeas cumulative error analysis in this case,[5] the Idaho Supreme Court's rejection of Johnson's cumulative error claim was reasonable. As the Idaho Supreme Court recognized, though the trial court should have excluded the testimony of Johnson's work supervisor regarding the times and locations Johnson worked on certain dates, and what type of work he performed (State's lodging F-5, pp.14-17), other evidence which "correlated almost exactly" with the impermissible testimony was introduced later, without objection, through a personal work calendar during Johnson's trial testimony (State's lodging F-5, pp.17-18). This error thus had virtually no prejudicial effect, and could not effectively cumulate with the detective's impermissible testimony discussed above to produce reversible cumulative error, either pursuant to an AEDPA or *de novo* review of this claim.

---

[5] The Idaho Supreme Court identified one other trial court error in its cumulative error analysis – that the trial court erred by concluding that the state committed a discovery violation. (State's lodging F-4, pp.18-20.) Because this was an error committed in Johnson's favor, it is of no help to him in establishing cumulative error.

D: Conclusion

Given the deference owed to the state courts' adjudication of Claims One, Two, Three, and Five under AEDPA, Johnson cannot show the Idaho Supreme Court's rejection of these claims constituted an unreasonable application of applicable United States Supreme Court precedent, or were based upon an unreasonable factual determination. The state therefore respectfully requests that this Court deny and/or dismiss, with prejudice, Johnson's entire habeas petition.

DATED this 13th day of May, 2020.

/s/
MARK W. OLSON
Deputy Attorney General
Capital Litigation Unit

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on or about the 13th day of May, 2020, I served a true and correct copy of the foregoing document by filing it in the ECF system.

| Craig Durham | | |
|---|---|---|
| Ferguson Durham, PLLC | ____ | U.S. Mail |
| 223 N. 6th Street | ____ | Hand Delivery |
| Suite 325 | ____ | Overnight Mail |
| Boise, ID 83702 | ____ | Facsimile |
| | X | Electronic Court Filing |

/s/_____
MARK W. OLSON
Deputy Attorney General
Capital Litigation Unit